Carl L. CAMPBELL, Plaintiff,

v.

Raphael I. NIXON, District Director of Internal Revenue Service, and The United States of America, Defendants.

Civ. A. No. 20268.

United States District Court
E. D. Michigan, S. D.

Aug. 16, 1962.

James H. Larva, Columbus, Ohio, and Watts A. Shelly, Dearborn, Mich., for plaintiff.

Robert C. Bruce, Dept. of Justice, Washington, D. C., and Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., for defendants.

McCREE, District Judge.

This cause was tried to the court on February 8, 1962. Having considered the evidence presented, the stipulations made, and the briefs submitted by counsel, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. This is an action against the District Director of Internal Revenue Service and the United States of America, in which plaintiff seeks to recover amounts paid on "100 per cent" penalties assessed by the District Director of Toledo, Ohio, under Sections 6671 and 6672 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6671, 6672, to abate the remaining balance of said assessment, and to perpetually restrain and enjoin defendants from making any seizures, collections, or distraint of any property belonging to plaintiff under liens founded on said assessment. Jurisdiction is asserted under 28 U.S.C. § 1346(a) (1).[1] Defendants have filed a counterclaim seeking judgment against plaintiff in the sum of $43,978.63, being the unpaid balance of the penalty assessments.

2. The penalty assessments resulted from nonpayment of employee withholding and social security taxes by the Flexible Conveyor Co. for the quarter ending June 30, 1956, in the sum of $12,954.13, and for the quarter ending September 30, 1956, in the sum of $38,391.91.

3. Flexible Conveyor Co. was incorporated under the laws of the State of Ohio in April, 1947, with its principal place of business at Sandusky, Ohio. In May, 1947, the corporation acquired the assets of a partnership composed of William P. Leyland and Vaughn C. Salter, in exchange for shares of stock. The original officers of the corporation were William P. Leyland (president), Vaughn C. Salter (vice-president), Lorraine Salter (secretary), and Edith Leyland (treasurer).

4. Plaintiff, Carl L. Campbell, a citizen of the State of Michigan, is a certified public accountant and has been a partner in the public accounting firm of Campbell, Rose & Co. since 1940. The firm maintains offices in Dearborn, Michigan, and Columbus, Mansfield, and Worcester, Ohio.

5. William Leyland became a client of Campbell-Rose in 1943 or 1944. Thereafter, the accounting firm served as independent auditors for Leyland's conveyor manufacturing business.

6. In June, 1949, Vaughn Salter and Lorraine Salter resigned their positions as directors and officers of Flexible Conveyor Co., and at a meeting of the board of directors on May 11, 1950, plaintiff was elected vice-president and his accounting partner, Dale E. Rose, was elected secretary. The Leylands continued in office as president and treasurer.

7. Plaintiff and Dale Rose were each paid $100 per month salary during their tenure as officers of Flexible. The firm of Campbell, Rose & Co. continued to receive separate fees from Flexible for professional services rendered. Plaintiff's salary from Flexible constituted less than ten percent of his income. He is, and has been, a director of eight or nine other companies.

8. Rose remained in office as secretary of Flexible until his resignation on July 31, 1956. Plaintiff formally resigned as vice-president in September, 1956, having indicated his intention to resign as early as April, 1956.

9. In 1956, there were 927 shares of Flexible stock outstanding, of which number William Leyland held 622 shares. Although neither plaintiff nor Dale Rose held stock in his own name, 185 shares were owned by the Aetna Investment

---

1. "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws * * *."

Company, a partnership composed of their wives.

10. Neither plaintiff nor Rose was assigned any regular or specific duties as officers of Flexible. Their primary function was to confer with and advise William Leyland with respect to the business affairs and tax matters of Flexible. The duties of vice-president, as stated in the corporation's Code of Regulations adopted in 1947, are as follows:

"The Vice-President shall perform all duties of the President in his absence or during his inability to act, and shall have such other and further powers, and shall perform such other and further duties as may be assigned to him by the Board of Directors."

11. During his association with Flexible, plaintiff continued to be actively engaged in the affairs of his accounting firm, and rarely visited the offices of Flexible. Before October, 1955, plaintiff was in Sandusky no more than two or three times a year. From October, 1955, through April, 1956, he spent considerable time at Flexible's offices, principally to perform accounting services for the company.

12. The affairs of Flexible were managed and directed by its president, William Leyland. When the company began to experience serious financial difficulty in 1955 and 1956, all decisions as to which of the company's creditors would be paid, and in what amounts, were made solely by Leyland. Plaintiff's advice in these matters frequently was rejected.

13. The task of preparing the payroll, billing customers, and posting the ledgers of the company was assigned by Leyland to his private secretary, Mrs. Edith Riley.

14. Flexible maintained a payroll account and a general account at a Sandusky bank. Three persons were authorized to sign checks drawn on these accounts: Leyland, Mrs. Riley, and plaintiff. Two signatures were needed to validate a check. All checks were prepared by Edith Riley solely at Leyland's direction. Plaintiff occasionally countersigned checks but he did not have authority to sign with Mrs. Riley except with Leyland's knowledge and permission. Mrs. Riley accepted instructions only from Leyland. As a matter of course, she drew checks for federal employment taxes after each payroll date, but Leyland often placed these checks in the company safe without signing them. The checking accounts were closed on September 19, 1956.

15. Leyland signed the withholding tax returns for the second and third quarters of 1956 (the period for which plaintiff was assessed). Plaintiff had no part in the preparation of these returns, but was aware of the corporation's delinquency in remitting to the government.

16. The resignation of Dale Rose as secretary of Flexible was the result of his concern over the declining solvency of the corporation and over Leyland's indifference to the company's tax obligations. Plaintiff shared these concerns and feared for the reputation of his accounting firm. As a result of discussions between plaintiff and Rose, plaintiff went to the offices of the Internal Revenue Service at Toledo, in August, 1956, and informed the chief of the collection division of the deteriorating financial condition of Flexible. Plaintiff furnished a list of the company's accounts receivable and urged IRS to take measures to salvage what it could with respect to the unpaid taxes. This information resulted in partial liquidation of the company's tax liability.

17. Ultimately, Flexible Conveyor Co. was placed into involuntary bankruptcy, and $12,453.85 was paid by the trustee in bankruptcy to the Director of Internal Revenue on November 20, 1959.

18. Penalty assessments were made on October 15, 1957, against plaintiff and against William Leyland for the unpaid balance of employee withholding and social security taxes for the second and third quarters of 1956. Leyland proved to be uncollectible and died in Florida leaving an insolvent estate. To date of

trial, plaintiff had paid $2,527.84 on the aforesaid assessments. The instant suit followed disallowance of his claims for refund on December 28, 1959.

## DISCUSSION

Although plaintiff has not paid the full amount of the penalties assessed against him, the full payment rule of Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), rehearing 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), is no bar here, since the taxes to which the penalties apply are divisible. Steele v. United States, 280 F.2d 89 (8th Cir. 1960); Ruby v. Mayer, 194 F.Supp. 594 (D.N.J.1961). Accordingly, this court has jurisdiction over the instant cause.

The assessments against plaintiff were founded upon Section 6672 of the Internal Revenue Code of 1954, which provides:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *"

Section 6671(b) defines "person" to include

"an officer or employee of a corporation * * * who * * * is under a duty to perform the act in respect of which the violation occurs."

The government contends that plaintiff is such a person, within the meaning of the statute. It relies on the fact that plaintiff was an officer of the corporation and was authorized to co-sign checks drawn on corporate accounts. It further contends that plaintiff willfully failed to collect and pay over the employment taxes, in that he did not arrange for the issuance of a check for these taxes over his signature and that of Mrs. Riley after the president balked at making payment.

The record, however, clearly shows that plaintiff was neither the disbursing officer for the corporation nor did he have the authority to direct the payment of tax obligations out of corporate funds against the wishes of the president. It was the president, and no one else, who had, and at all times exercised, the right to decide which creditors of the company would be paid. One possessed of such authority is regarded as the person who is under the duty to collect, account for, and pay over employment taxes, Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960), except where he delegates the ultimate control of corporate management to others, Wiggins v. United States, 188 F.Supp. 374 (E.D.Tenn.1960); Cushman v. Wood 149 F.Supp. 644 (D. Ariz.1956).[2] The mere holding of corporate office does not ipso facto make for personal liability on the part of the officer. Sperry v. Tomlinson, 1 AFTR2d 1810 (S.D.Fla.1958) (vice-president); Mattox v. United States, 3 AFTR2d 832 (D.Minn.1959) (secretary-treasurer).

If plaintiff had the duty and the means to cause the taxes to be remitted from corporation funds, as the government urges, it is difficult to understand why he solicited the Internal Revenue Service to enforce collection. It is even more difficult to understand plaintiff's conduct when we consider that the third-quarter 1956 taxes were not yet due at the time. If anything, this conduct indicates that plaintiff was himself powerless to cause the taxes to be remitted.

2. Cf. Schweitzer v. United States, 193 F.Supp. 309 (D.Neb.1961) and Levy v. United States, 140 F.Supp. 834 (W.D. La.1956), absolving the delegating officer on the basis that his failure to cause payment was not wilful, rather than on the basis that he was not a person responsible for the collection and payment of the taxes.

830

Even if it were possible to view plaintiff as being a person charged with the duty to pay over the employment taxes, it does not appear from this record that his failure so to do was "willful" within the meaning of section 6672. While proof of a tax evasion motive is not necessary to establish willfullness [3], it must be shown that nonpayment resulted from a voluntary and intentional decision (whatever the reason) to apply corporate funds to other obligations or for other purposes. Bloom v. United States, supra; Wiggins v. United States, supra; Nugent v. United States, 136 F. Supp. 875 (N.D.Ill.1955). Where there are no funds at all, nonpayment of taxes is not willful and penalties may not be assessed. Cushman v. Wood, supra; Levy v. United States, 140 F.Supp. 834 (W.D. La.1956).

If plaintiff indeed had disbursing authority, there is nothing to suggest that he applied or directed the application of corporate funds to purposes other than payment of tax liabilities. The fact is that plaintiff could not have issued a valid check for taxes unless Leyland or Mrs. Riley countersigned. Leyland was unwilling to do so, and Mrs. Riley was subject only to Leyland's instructions. If, having the duty to make payment, plaintiff was prevented from discharging it by the actions of other persons in the corporation, he must be relieved of liability. Cumberlander v. United States, 7 AFTR2d 1352 (S.D.Ind.1961).

## CONCLUSIONS OF LAW

1. Plaintiff was not a person required to collect, truthfully account for, and pay over employee withholding and social security taxes for Flexible Conveyor Co. for the second and third quarters of 1956, under section 6672 of the Internal Revenue Code of 1954.

2. Even if plaintiff were under such a duty, he did not willfully fail to perform the obligation.

3. The penalties assessed against plaintiff are invalid.

4. Plaintiff is entitled to a refund of the amounts paid by him under protest by reason of the penalty assessments, viz., the sum of $2,527.84, together with interest and costs.

5. Defendants' counterclaim for unpaid penalties should be denied.

A judgment in accordance herewith may be entered.

3. Except in a criminal prosecution. Wilson v. United States, 250 F.2d 312 (9th Cir.1957).