**Julian W. MOODY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 23942.**

United States District Court
E. D. Michigan, S. D.

Sept. 7, 1967.

Donald G. Corley, Jackson, Mich., for plaintiff.

Donald R. Anderson, Dept. of Justice, Washington, D. C., John H. Shepherd, and Robert F. Ritzenhein, Asst. U. S. Attys., Detroit, Mich., for defendant.

## OPINION

TALBOT SMITH, District Judge.

Plaintiff brought suit to recover penalties and interest in the amount of Three Thousand Nine Hundred Sixty-Two ($3,962.76) Dollars and Seventy-six cents assessed under Section 2707(a) (Internal Revenue Code of 1939) on March 16, 1954. The parties have failed

a stipulation with the Court that the case is to be submitted to the Court for decision based upon the pleadings and stipulations submitted by the parties.

There is little dispute as to the basic facts before the Court.

Plaintiff, a high school graduate, has been employed in landscaping activities throughout his work life. In 1947, Plaintiff and his wife purchased a sole proprietorship known as Barnes Importers, a small mail order business engaged in selling flower bulbs imported from Holland. The principal assets purchased were the exclusive representation of a major Dutch bulb grower (Van Tubergen) and its mailing list.

The Barnes Importers continued as a sole proprietorship for about four years, during which time plaintiff was owner and general manager. During this time, the firm employed a general secretary (Janice Thur) whose duties involved correspondence, appointments, processing orders and bookkeeping. In addition, a free lance accountant was retained to set up an accounting system and supervise the bookkeeping work of the secretary.

During this period, the Barnes Importers withheld taxes from the wages of its employees and withholding tax returns were timely filed and taxes paid. The determination of the amount of the taxes to be withheld, together with the preparation of the withholding tax returns was done by or under the supervision of the free lance accountant. When prepared, the returns were signed by the owner of the business as the law required.

In 1950, Paul Kruder, a college graduate specializing in accounting, was hired by the firm. Mr. Kruder was hired with the understanding that he was to be in charge of the general administrative affairs of the business, which included all office procedures, financial matters, bookkeeping and accounting. The services of the free lance accountant were no longer needed and his association with the business terminated.

Barnes Importers was incorporated in 1951. The plaintiff and Kruder were equal stockholders, each owning 49% of the stock of the corporation. The remaining two (2%) was owned by Morley C. Townsend, who acted as attorney to the corporation and served as corporate secretary.

Shortly after incorporation, the directors passed a resolution authorizing either the plaintiff or Kruder to sign checks for and on behalf of the corporation.

Among his duties as Vice-President and Treasurer of the corporation, Kruder was solely responsible for reconciliation of the bank accounts, maintaining payroll records, computing the amount of the taxes to be withheld, and the preparation and filing of the withholding tax returns.

The plaintiff and Kruder owned the same amount of stock in the corporation and their working relationship is described as being more in the nature of a partnership than as two officers in a corporation.

In the summer of 1952, the corporation's principal supplier, Van Tubergen, refused to ship the fall line of bulbs which were needed to fill the orders received from Barnes' customers unless immediate payment was made by Barnes to Van Tubergen for past shipments. (Moody dep. 8, 30–32)

Barnes could not make such payment, and (unable to fill the orders for bulbs which it had received) on September 19, 1952, discharged its employees and closed its doors.

Barnes filed a voluntary petition in bankruptcy in November, 1952. (Moody dep. 32–33; Pre Trial Order, p. 7, par. 15).

The penalties in question relate to the withholding taxes of Barnes Importers, Inc. for the second and third quarters of 1952. The second quarter would end June 30, 1952 and the return and taxes were due and payable July 31, 1952. The third quarter ended September 30,

1952 and the return and taxes were due and payable October 31, 1952.

During the second (April through June) and third (July through September 19) quarters of 1952, Barnes deducted from the wages of its employees the taxes which it was required by Sections 1401 and 1622 to collect from their wages. [These taxes in a total amount of $3,962.76 were not accounted for, or paid over, by Barnes to the United States.] (Pre Trial Order, p. 5, pars. 2, 3).

On August 4, 1952, Barnes filed a withholding tax return for the second quarter of 1952 indicating a liability of $2,569.23. On or prior to August 26, 1952 a check was sent to the Internal Revenue Service in this amount in satisfaction of such liability. The check was returned by the IRS on September 16, 1952. [No evidence was ever presented as to the account on which the check was drawn, who signed the check or the reason the IRS returned it.]

The withholding tax return for the second quarter of 1952 was prepared and signed by Paul Kruder. There was no withholding tax return filed for the third quarter of 1952, because the corporation's funds were offset against its indebtedness at the bank on September 20, 1952 and at this time the corporation closed its doors and ceased to do business.

On March 16, 1954, the taxes in the amount of $3,962.76 which Barnes had failed to account for and pay over to the United States were assessed against the plaintiff under Section 2707 (Pre Trial Order p. 5, par. 1). The plaintiff paid the assessment, accrued interest in the amount of $1,387.34, and a lien fee (in the amount of $.75) in 1960, and filed a timely claim, which was denied, for a refund of his total payment in the amount of $5,350.85. (Pre Trial Order, p. 6, pars. 5, 6).

The parties have stipulated, for the purposes of this action, that:

1. On March 16, 1954, there was assessed against the plaintiff a penalty in the amount of $3,962.76 under Section 2707(a) of the Internal Revenue Code of 1939.

2. FICA (Federal Insurance Contributions Act) taxes and withholding taxes had been deducted from the wages of the employees of The Barnes Importers, Inc., East Aurora, N. Y., as follows:

|  | FICA | Withholding | Total |
|---|---|---|---|
| 2d quarter, 1952 | $228.19 | $2,112.86 | $2,341.05 |
| 3d quarter, 1952 | 129.24 | 1,492.47 | 1,621.71 |
|  |  |  | $3,962.76 |

3. The taxes stated in paragraph 2 were not accounted for or paid over by The Barnes Importers, Inc., to the defendant.

4. Barnes Importers, Inc., filed a return for the FICA and withholding taxes for the second quarter of 1952 on or about August 4, 1952; no such return was filed for the third quarter of 1952.

5. The plaintiff paid the assessment ($3,962.76) stated in paragraph 1, accrued interest ($1,387.34) and a lien fee (.75) as follows:

| Date | Amount |
|---|---|
| January 6, 1960 | $1,500.00 |
| January 20, 1960 | 2,000.00 |
| February 3, 1960 | 1,000.00 |
| February 25, 1960 | 850.85 |
|  | $5,350.85 |

6. The plaintiff filed a claim for refund of the amounts stated in paragraph 5 on May 18, 1961, and an amended claim for their refund on November 8, 1961 (attached as Exhibit A to plaintiff's complaint).

7. On December 26, 1962, plaintiff was notified that the claims for refund stated in paragraph 6 had been disallowed.

8. From January 1, 1952, to September 22, 1952, The Barnes Importers, Inc., maintained a checking account for its funds in the Erie County Trust Company, East Aurora, New York.

9. From January 1, 1952, to September 22, 1952, the Erie County Trust Company was authorized by The Barnes Importers, Inc., to permit withdrawals from the account referred to in paragraph 8 at the direction (and under the signature) of either the plaintiff as its president or one Paul J. Kruder as its vice-president and treasurer.

10. The deposits, withdrawals, and balances of the bank account of The Barnes Importers are set out in defendant's Request No. 9 for the Admission of Facts; the ledger cards of the account of The Barnes Importers, Inc., with the Erie County Trust Company, East Aurora, New York, submitted by the defendant to establish the deposits, withdrawals and balances of the corporation were made in the regular course of business of the Erie County Trust Company and it was the regular course of business for Erie County Trust Company to make such ledger cards as a memorandum or record of the deposits and withdrawals at the time of such deposits and withdrawals or within a reasonable time thereafter.

11. The plaintiff purchased the business known as The Barnes Importers in November or December, 1947.

12. From 1947 until the business was incorporated, the plaintiff was the general manager of the Barnes Importers.

13. The Barnes Importers, Inc., was incorporated in the State of New York on October 27, 1951. Its stockholders were at all relevant times:

| | |
|---|---|
| Plaintiff | 49% |
| Paul Kruder | 49% |
| Morley Townsend | 2% |

14. The officers of the Barnes Importers, Inc., were at all relevant times:

| | |
|---|---|
| President | Plaintiff |
| Vice-President | Paul Kruder |
| Secretary | Morley Townsend |
| Treasurer | Paul Kruder |

15. On or about November 7, 1952, a petition in bankruptcy was filed by Barnes Importers, Inc., in the United States District Court for the Western District of New York. Claims for unpaid wages were filed against the bankrupt estate of the corporation in the amount of $2,430.67.

16. The parties further stipulate the authenticity of each exhibit marked for identification at the deposition of the plaintiff on October 15, 1964, or at the deposition of Samuel M. Gilmore on April 7, 1965.

17. All jurisdictional facts have been stipulated.

Expressed in the statutory language of Section 2707, this assessment was made against the plaintiff because the plaintiff was considered to be "an officer or employee" of The Barnes Importers, Inc., "under a duty" to "truthfully account for and pay over" to the United States the taxes which Barnes withheld from the wages of its employees, and is charged to have "willfully fail(ed): to "truthfully account for and pay over" those taxes.

To recover the payments which the plaintiff has made pursuant to this assessment he must prove that the assessment against him was unlawful because

1) either he was not such an officer or employee of Barnes, or

2) if such an officer, his failure to truthfully account for and pay over the taxes to the defendant was not "willful."

The Court finds, for reasons discussed below, that

1) Mr. Moody was such an "officer or employee" of Barnes within the meaning of the statute, and

2) his failure to "truthfully account for and pay over the taxes to the de-

fendant" was *not* "willful" within the meaning of the statute.

## STATEMENT OF THE PLAINTIFF'S CLAIM

Plaintiff argues that the penalties assessed against plaintiff under Section 2707(a) of the Internal Revenue Code of 1939 were illegal and erroneous for the following reasons:

(1) The plaintiff was not the officer of Barnes Importers, Inc., who was charged with the duty and responsibility for the collection and payment of withholding and FICA taxes.

(2) Even if the plaintiff were found to be the officer charged with such duty, his failure to collect and pay over such taxes was not due to willfulness.

The taxes for the second quarter and third quarter of 1952 are in issue. Plaintiff alleges that a check was sent to the Government to pay its second quarter withholding tax liabilities but that it was subsequently returned by the Government presumably because of insufficient funds. The actual check is not available.

It is plaintiff's theory that the filing of a tax return for the second quarter of 1952 with a check for the amount of taxes determined to be due, strongly refutes the necessary element of willfulness either on the part of plaintiff or any other officer of the corporation.

The withholding taxes and return for the third quarter of 1952 were not due until October 31, 1952. The corporation's funds were impounded on September 20, 1952. The corporation was delinquent in meeting payrolls during the third quarter of 1952 and later in the bankruptcy proceedings there were claims for unpaid wages of $2,430.67.

It is plaintiff's theory that if there were insufficient funds to meet payrolls and what funds were available were impounded, the failure to collect and pay over $1,621.72 of withholding and FICA for the third quarter of 1952 was not due to willfulness either on the part of plaintiff or any other officer of the corporation.

As to the remaining issue of law, plaintiff argues that the burden of proof of willfulness is on the defendant.

## STATEMENT OF DEFENDANT'S DEFENSE (Pre Trial Order, pp. 3–5)

With respect to the circumstances of this action, the defendant contends that:

1) The plaintiff, as president and chief executive officer of Barnes Importers, Inc., was "as such officer * * under a duty" to truthfully account for and pay over the FICA and withholding taxes of the employees of Barnes Importers, Inc., for the second and third quarters of 1952, within the meaning of Section 2707(d), Internal Revenue Code of 1939.

2) The plaintiff "willfully" failed to truthfully account for and pay over those taxes within the meaning of Section 2707 (a) Internal Revenue Code of 1939, and with regard to the provisions of Section 3661, particularly in view of the fact that at the time when such taxes were collected or withheld from the wages of the employees of Barnes Importers, Inc., the corporation had (or subsequently received) sufficient funds to cover those taxes and such funds were used to pay other creditors of the corporation at the direction, or with the assent, of the plaintiff.

With respect to the issue of law before the court, defendant alleges that the burden of proving that he was not liable for the taxes which he seeks to have refunded by his complaint is on the plaintiff.

## APPLICABLE SECTIONS OF THE INTERNAL REVENUE CODE OF 1939

*Section 1400* provides for the collection "upon the income of every individual" of a tax, commonly known (Section 1432) as the "Federal Insurance Contributions Act" (FICA) tax, "with respect to [his] employment."

*Section 1401* provides that this tax "shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid" and that "[e]very employer re-

quired so to deduct the tax shall be liable for the payment of such tax."

*Section 1420(c)* provides "[s]uch taxes shall be collected and paid in such manner, at such times, and under such conditions, not inconsistent with this subchapter * * * as may be prescribed by the Commissioner, with the approval of the Secretary."

*Section 1430* provides that "[a]ll provisions of law, including penalties, applicable with respect to any tax imposed by section 2700 or section 1800, and the provisions of section 3661, shall, insofar as applicable and not inconsistent with the provisions of this subchapter, be applicable with respect to the taxes imposed by this subchapter."

*Section 1622(a)* provides that "[e]very employer making payment of wages shall deduct and withhold upon such wages a tax", commonly known as the "withholding tax" or "income tax at source."

*Section 1623* provides that "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this subchapter."

*Section 1627* provides that "[a]ll provisions of law, including penalties, applicable with respect to the tax imposed by section 1400 shall, insofar as applicable and not inconsistent with the provisions of this subchapter, be applicable with respect to the tax under this subchapter."

*Section 3661* provides that "[w]henever any person is required to collect or withhold any internal-revenue tax from any other person and to pay such tax over to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States."

*Section 2707* provides that "(a) [a]ny person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700(a) * * * shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax * * * not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected" and "(d) [t]he. term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." [Section 1821(a) (3) and (a) (4) contain identical provisions with respect to the tax imposed under Section 1800.]

The following issues of fact remain to be decided:

1. Was the plaintiff "an officer or employee" of Barnes Importers, Inc. "who as such officer [or] employee" was "under a duty" to pay, collect, or truthfully account for and pay over the taxes in question within the meaning of Section 2707(a) of the Internal Revenue Code of 1939?

2. If the plaintiff was such an officer of Barnes Importers, Inc., did he "willfully fails to pay, collect, or truthfully account for and pay over" those taxes within the meaning of Section 2707 (a) of the Internal Revenue Code of 1939?

The following issue of law remains to be decided:

1. Whether the burden of proof with respect to (2), supra, rests on the plaintiff or the defendant.

██ 1. Was the plaintiff "an officer or employee" of Barnes Importers, Inc. "who as such officer [or] employee" was "under a duty" to pay, collect, or truthfully account for and pay over the taxes in question within the meaning of Section 2707(a) of the Internal Revenue Code of 1939?

*Plaintiff was an officer of Barnes under a duty to truthfully account for and pay over the taxes deducted from its employees' wages*

Section 2707(d) defines "person" as "an officer or employee of a corporation, * * * who as such officer, (or) employee * * * is under a duty to perform the act in respect of which the violation (the "willful" failure to "truth-

fully account for and pay over" the taxes) occurs."

This statutory language has been broadly construed to "include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred." United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962).

"A responsible person is one so connected with a business as to be in a position to exercise full authority with respect to its financial affairs." Melillo v. United States, 244 F.Supp. 323, 326 (E.D.N.Y.1965). "A person may be such a responsible officer, director or employee even if he is not the only such person. More than one individual in a corporation may be responsible for the payment of withholding taxes, and the fact that one individual may not have been the sole responsible person does not, by that fact alone, excuse him." Kolberg v. United States, 13 AFTR 2d 1615, 1619.

It is clear that the plaintiff was, under the broad construction of this section, such a "responsible person" under the facts and circumstances here present. The plaintiff had been the original owner of the business and its general manager. (Moody Dep. 7, 12). After its incorporation in 1951, the plaintiff owned 49% of the stock of the corporation, served as its president, and had authority to sign checks drawn on the corporate account. (Pre Trial Order, p. 6, par. 9; p. 7, pars. 11–14)

The plaintiff admitted that he knew the taxes had to be withheld from the employees' wages and paid to the Government. (Moody Dep. 15–17, 37, 48–49). He further admitted that even during the period of business crises, he often discussed with Mr. Kruder, his partner and accountant, the corporation's current financial situation. (Moody Dep. 104–106, 108–109).

The bank officer of the Erie County Trust Company with whom the corporation had a line of credit testified that the plaintiff was the principal representative of the corporation in its transactions with the bank. (Gilmore Dep. 15, 55–57). The plaintiff did most of the talking in arranging loans to the corporation from the bank; he was the "substantial person behind the whole thing", "the man who handled the business", and "the one that we talked to when things get rough." (Gilmore Dep. 17–18, 42, 59).

The plaintiff admitted that the corporation's failure to pay over the taxes to the Government was not "solely (Kruder's) fault or that this was his (Kruder's) area or responsibility alone." If payment of the taxes was Kruder's "primary responsibility", it was not his "sole responsibility", and he "shared it with other officers" including, of course, the plaintiff. (Moody Dep. 117, 119).

It is clear that although Kruder was completely in charge of the accounting aspects of the business "with a specific responsibility as far as the operational procedures were concerned" (Moody Dep. 21), the Court finds that the plaintiff was also under a duty to truthfully account for and pay over the taxes, which flowed from his position of authority with respect to the company's financial affairs even though this authority may not have been exercised in view of the complete reliance and confidence which the record shows plaintiff placed in Mr. Kruder.

■ 2. If plaintiff was such an officer of Barnes Importers, Inc., did he "willfully fails to pay, collect, or truthfully account for and pay over" those taxes within the meaning of Section 2707 (a) of the Internal Revenue Code of 1939?

*Although plaintiff was such an officer of Barnes Importers, Inc., his failure "to pay, collect or truthfully account for and pay over" taxes under Section 2707 (a) of the Internal Revenue Code of 1939 was not willful.*

Plaintiff asserts that even if plaintiff were charged with the duty to collect and pay over the withholding taxes of the corporation, the subject penalties would not be valid unless it were established that his failure to comply with such duty was due to willfulness.

The nature of the penalty here involved was described in Petrie v. United States, 10 AFTR2d 5117 (GA1962), in which the court instructed the jury as follows:

> " \* \* \* the amount which plaintiff seeks to recover in this action was not assessed against him as a tax owing by him but as a penalty or punishment for an alleged violation of the law. The penalty is not imposed as a remedial provision designed simply to enable the Government to collect taxes due. \* \* \* The liability asserted against Dr. Petrie is wholly distinct from and not a substitution from the corporation's liability for withheld taxes."

A failure to pay over taxes to the United States is "willful" under Section 2707 if there was "a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States." There "need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present." Bloom v. United States, 272 F.2d 215, 223 (9th Cir. 1959). Campbell v. Nixon, 207 F. Supp. 826 (E.D.Mich.1962); United States v. Sefansky, 65–2 USTC par. 0637 (E.D.Mich.1965).

In Campbell v. Nixon, supra, the court pointed out that even where plaintiff is the "person" charged with the statutory duty, it must appear that the failure to pay the required taxes was "willful".

> "While proof of a tax evasion motive is not necessary to establish willfulness, it must be shown that nonpayment resulted from a voluntary and intentional decision (whatever the reason) to apply corporate funds to other obligations or for other purposes. (citations omitted). Where there are no funds at all, nonpayment of taxes is not willful and penalties may not be assessed." Id. 207 F.Supp. at 830

However, the "mere fact that the corporation may have had money to pay the taxes but used it to pay other bills, with the knowledge (of plaintiff), would not be sufficient to establish a willful act. The proof would have to disclose that such conduct was done on purpose, knowing that the taxes were due but paying other bills ahead of them." Wiggins v. United States, 188 F.Supp. 374, 376 (D. C.Tenn.1960).

In Cumberlander v. United States, 7 AFTR2d 1352 (Ind. 1961) the Court defined "willfulness" to the jury as follows:

> "An act or ommission done consciously, intentionally, or knowingly and purposely, without justifiable excuse, or that it was done with a set purpose to accomplish the results which followed the act though the act was known to be forbidden."

It must be emphasized that the circumstances before the court lend additional weight to plaintiff's arguments as to "willfulness".

It is clear from the facts before the Court that plaintiff's business was, at the time in question, at a crisis stage. (Moody Dep. 45, 48). Mr. Moody was involved in a last ditch effort to save a business which he had begun and developed through a period of years and in fact, plaintiff drew only a minimal salary during the time involved and finally no salary at all. (Protest, p. 9)

If the facts before the Court were altered to the extent that no business crisis had developed which monopolized plaintiff's resources of time, cash and energy, plaintiff would be hard put to argue that because he placed his financial reliance, even justifiably, on Mr.

Kruder, his lack of knowledge as to these aspects of the business operation would necessarily excuse him from this liability.

However, these were not normal times. This was a business created and developed essentially by one man, and by a man who had consistently recognized that his abilities lay in the substance of the business and that others had to be relied on—at first a certified public accountant—later Mr. Kruder to handle the financial details.

Although Mr. Moody was President of Barnes, Importers, Inc., he was primarily in charge of sales and marketing. He had no knowledge about, or expertise in, the business aspects of Barnes Importers, and the daily corporate financial life was carried on by and entrusted to Paul Kruder. Mr. Kruder was a specialist, college trained, in this field.

If this were so in normal times, the record is clear that this separation of duties was particularly acute during the atmosphere of business crises which became constant at the time involved. Mr. Kruder was an equal stockholder in the corporation, and his functions included bookkeeping and accounting, payment of wages and maintenance of payroll records, payment of creditors, preparation of financial statements and the reconcilitation of bank accounts. As plaintiff points out, Mr. Kruder could exercise full authority with respect to corporate financial affairs, but Mr. Moody was unable to make even the most elementary decision as to financial affairs without consulting Mr. Kruder. (Moody Dep. 105).

Plaintiff did not knowingly and intentionally fail to collect and pay over the taxes in question because he did not have sufficient knowledge of the financial affairs of the corporation. He did not know, when the return and check were sent, that there would be insufficient funds in the account to cover the check.

Nor was plaintiff's reliance upon Mr. Kruder in circumstances which indicate to the court any willful or culpable ignorance of the detailed financial facts of life of the business. Plaintiff was acutely aware that his business was mortally afflicted and he and Mr. Kruder, an equal stockholder, worked feverishly—each in his own area of experience—to save the business.

In view of this finding, the Court does not find it necessary to discuss the question of whether bank balances or bank deposits are significant items, from which both parties draw such comfort. The testimony is clear that plaintiff had nothing to do with the reconciliation of the corporate bank account and no knowledge of day-to-day bank balances.

And, since it is clearly plaintiff's lack of knowledge which militates against his "willfulness" and we have held this lack of knowledge to be non-culpable, the Court will not pass on plaintiff's argument that the mere sending of the return and the check for the second quarter of 1952 is additional proof that there could be no "willful" failure to file the return in question, although the check was later returned, presumably—there is no evidence on this point—for insufficient funds.

Burden of Proof

The Court agrees with the Government that the burden of proof as to all aspects of plaintiff's case rests upon plaintiff under recent decisions and that the weight of authority favors this position. See, e.g. United States v. Molitor, 337 F.2d 917 (9th Cir. 1964); United States v. Sefansky, 65–2 USTC par. 9637 (E.D.Mich.1965).

However, the Court finds that while plaintiff is a "person" within the meaning of the statutes involved, he has sustained his burden of proof as to the question of lack of "willfulness".

Order

In accordance with the stipulations of of the parties, a suitable order may be prepared.