**John T. KUBINSKI, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**Gene GOVE, Third-Party Defendant.**

**No. 4–66 Civ. 208.**

United States District Court
D. Minnesota,
Fourth Division.

Feb. 26, 1968.

Howard S. Cox, of Wiese & Cox, Minneapolis, Minn., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., and David A. Wilson, Jr., and Daniel J. Dinan, Attys., Department of Justice, Washington, D. C., and Patrick J. Foley, U. S. Atty., Minneapolis, Minn., for the United States of America.

Richard W. Greeman, Minneapolis, Minn., for third-party defendant.

## MEMORANDUM DECISION

NORDBYE, District Judge.

This proceeding came before the Court on a complaint filed by the plaintiff, John T. Kubinski, seeking to recover the sum of $135.60 which was paid by him to the Government as part of a one hundred per cent penalty assessed against him pursuant to Section 6672 of the Internal Revenue Code of 1954 in the amount of $1,870.29, plus interest, costs and disbursements. The Government in its answer gave plaintiff credit for the $135.60 paid and filed a counterclaim against him in the sum of $1,734.-69, the penalty imposed, plus interest, and filed a third-party complaint against one Gene Gove in the sum of $1,870.29, plus interest.

A concern known as the Northeast Plastics was first operated by the third-party defendant, Gene Gove, as a sole proprietorship. For a time Gove had a partner in the business, but that partnership was dissolved. His company was incorporated in the State of Minnesota as of June 7, 1961. Northeast Plas-

tic's principal activity was the fabrication of formica table tops, cabinet tops, bar tops, etc., and various types of paneling and covering with formica. It was a small concern with some two or three employees. The corporate feature of Northeast Plastics was more or less dormant prior to the early part of 1964. However, it appears that there was an agreement between Kubinski and Northeast Plastics whereby the plaintiff was to purchase a one-third interest in the corporation in 1964 for $1,000. The written agreement was not signed, but the $1,000 was paid by plaintiff. On May 27, 1964, Gove delivered to plaintiff a signed note for $500 which was executed because the assets of Northeast Plastics were less than had been represented when Kubinski paid the $1,000 for a one-third interest.

The plaintiff is a public accountant and some time in the summer of 1963 he commenced the performance of various accounting services for Northeast Plastics, but by the latter part of 1963 and the early part of 1964 his work had broadened and extended so that he took care of all of the books and records of that company in late 1963 or early 1964 or thereabouts, and the books and records were transferred from the headquarters of Northeast Plastics to plaintiff's own office. It is clear from the evidence that by the middle of 1964 Kubinski had assumed full charge of the office and financial operations of the company and acted as Secretary and Treasurer thereof. According to his personal tax statement, he received a salary from Northeast Plastics for the year 1964 of $1,322.94, and for some two months in the early part of 1965 a salary of $306.69 or thereabouts.

In 1964 Northeast Plastics obtained a loan from the Small Business Administration in the sum of $15,000. On June 10, 1964, Kubinski certified as Secretary of the Company that at a special meeting of the Board of Directors of Northeast Plastics the corporation assumed the SBA loan among other liabilities. When that loan was obtained, the com-

pany was able to take care of most of its liabilities with the aid of plaintiff's negotiations with the creditors, but it was not long before its difficulties increased so that it was unable to pay its bills promptly and many of its suppliers required that supplies be purchased on a C.O.D. basis. Whether Northeast Plastics actually completed its corporate status under Minnesota laws is not important in determining the issue herein. The parties hereto were proceeding under the assumption that the company was duly incorporated.

During the period that plaintiff was handling the business affairs of the company and on or about May 1, 1964, bank checks were to be signed either by Gene Gove or his wife and by plaintiff who was Secretary and Treasurer, or one Maurice Bussewitz, the latter being associated with the plaintiff.

■ When the employees of the company were paid, the withholding tax as well as the employees' share of the Social Security taxes, was withheld from their checks. This practice continued during the entire period that plaintiff was in charge of the office and financial affairs of the company, and admittedly both plaintiff and the defendant Gove were fully informed with respect thereto. They both knew that these trust funds had not been paid over to the Government and although at times Gove would sign checks in blank and to a large extent delegated to plaintiff the determination of which creditors should be paid, each had the duty to pay over the taxes withheld from the employees of Northeast Plastics for the last quarter of 1964. It also is clear that this same duty rested upon Gove during the first quarter of 1965 and as to plaintiff for the taxes collected up to February 24, 1965, when plaintiff notified the bank that his name should be removed from the signature card of Northeast Plastic's account, and at that time severed his connections with the company. The evidence fully sustains a finding that the failure to pay over these taxes by plaintiff and defendant Gove during

the periods in question was knowing and intentional within the meaning of Section 6672, Title 26, United States Code, and that plaintiff and the defendant Gove were "persons" within the purview of Section 6671(b) of the Code.

The defendant cites United States v. Graham, 9 Cir., 309 F.2d 210, among other cases, in support of its contention that plaintiff was a "person" within the meaning of Section 6671(b), and that a person includes "all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred." (p. 212). It is true that in the Graham case the Ninth Circuit remanded the case for a new trial due to the lack of findings on determinative issues, but the court clearly set forth its views as to the liability of a Director of a corporation which failed to pay over taxes collected by it, stating, at p. 212,

"* * * In our judgment the section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred."

And further, at p. 212,

"The question is simply whether the board of directors 'had the final word as to what bills should or should not be paid, and when.' Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 316."

Plaintiff refers to Campbell v. Nixon, 207 F.Supp. 826, where the court held that the mere holding of a corporate office does not ipso facto render an officer liable for penalty under the Internal Revenue Code when the corporation fails to pay over employment taxes, but in the instant case plaintiff in directing the office and financial affairs of the company took it upon himself, usually after conferring with Gove, to determine which creditors should or should not be paid and when. He was not solely a public accountant assigned to limited duties. He was the number one man in the company in disposing of its funds and in determining which creditors should be paid. See White v. United States, Ct.Cl., 372 F.2d 513. This is evident from the testimony given by Gove as well as the witnesses representing creditors such as T. T. Jones Lumber Company, Holdahl Company, Inc., and Plywood Industries. Certainly, it cannot be argued that Gove dominated plaintiff, a public accountant, as to which creditors should be paid. However, that Gove was informed and acquiesced in plaintiff's decisions in this regard is evident. Attention may be called to Government Exhibits 1857, 1882 and 1884 which are copies of checks made payable to Holdahl Company, a creditor of Northeast Plastics, for $823.63, $121.48, and $125.88 respectively, dated January 30, 1965, February 9, 1965, and February 10, 1965, and signed with the sole signature of J. T. Kubinski. It was in January, 1965, that plaintiff and Gove authorized the bank to honor checks of the company when signed by either Gove or Kubinski.

It is true that the financial condition of the corporation was worsening during the last quarter of 1964 and early 1965 and checks were being returned for want of sufficient funds in the bank. But that situation does not excuse plaintiff or Gove from the responsibility which rested upon them to account to the Government for the trust funds collected and obviously what plaintiff and Gove did was to divert the trust funds intentionally to the payment of creditors' bills.

The contention advanced that additional amounts had been collected by the Government which should be applied to reduce the assessment levied against plaintiff is not sustained by the evidence.

Findings of Fact and Conclusions of Law consistent herewith may be presented by the defendant upon ten days' notice.