**Robert G. DUDLEY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 22926.

United States Court of Appeals,
Ninth Circuit.

July 7, 1970.

Rehearing Denied Aug. 12, 1970.

Francis Heisler (argued), Heisler & Stewart, Carmel, Cal., for appellant.

Stephen H. Hutzelman (argued), Johhnie Walters, Tax Division, Mitchell Rogovin, Lee A. Jackson, Elmer J. Kelsey, Dept. of Justice, Washington, D. C., James R. Browning, Jr., U. S. Atty., Barbara Ashley Phillips, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, KILKENNY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from a judgment of the District Court denying appellant's claim for refund of tax in the amount of $3734.24 collected from him by the Internal Revenue Service pursuant to 26

---

* Hon. J. Warren Madden, Senior Judge, Court of Claims, sitting by designation.

U.S.C. § 6672 [1] and granting the United States' counterclaim in the amount of $9258.37 representing the difference between the amount of tax assessed against appellant and the amount collected. The District Court's opinion is reported at 285 F.Supp. 979 (N.D.Cal.1967).

In 1960, appellant was president and, along with his wife, principal stockholder of the Dudley Industrial Corporation, a manufacturer of ceramic bathroom fixtures with plants in Hollister and Hemet, California. The corporation failed to collect and pay over to the IRS employment and withholding taxes in the amount of $12,992.61 for the first two quarters of 1960, as required by Sections 3102 and 3402 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 3102, 3402. The corporation was experiencing financial difficulties at the time. An involuntary petition in bankruptcy was filed against it on or about September 15, 1960, and it was adjudicated a bankrupt on November 27, 1961. The IRS filed a claim in bankruptcy for the taxes due, but received no payment. In 1964, the IRS assessed penalties in the amount of the taxes due against appellant as the person who was required to pay over the taxes but who willfully failed to do so, pursuant to 26 U.S.C. § 6672.

Appellant brought suit in the District Court for a refund of monies seized from him by the IRS in partial satisfaction of that assessment. His grounds were that he did not "willfully" fail to pay over the tax and that he was not the "person" required to pay over the tax.[2] Following non-jury trial, the District Court found that appellant was the person responsible for the payment of the taxes in question and that his failure to do so was intentional and willful within the meaning of the statute. We disagree.

■ This circuit has defined willfulness as used in Section 6672 to mean the "voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States." There need not be present an evil motive or intent to defraud the United States. Bloom v. United States, 272 F.2d 215, 223 (9th Cir. 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). See also Turner v. United States, 423 F.2d 448, 450 (9th Cir. 1970); Pacific National Ins. Co. v. United States, 422 F.2d 26, 33 (9th Cir. 1970); United States v. Leuschner, 336 F.2d 246, 247–248 (9th Cir. 1964).[3]

We fail to find that appellant Dudley willfully or intentionally preferred other creditors over the United States. On May 1 or 2, 1960, he sent a check to the Internal Revenue Service in the amount of the corporation's withholding tax due for the first calendar quarter of 1960.

This check was received by IRS but for some reason never satisfactorily explained it was not presented to the bank for payment until on or about June 10, 1960. (R.T. 624–625). It was then dishonored by the drawee bank and was re-

1. 26 U.S.C. § 6672 reads as follows:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

2. "Person" is defined in 26 U.S.C. § 6671 (b), as follows: "The term 'person',
as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs."

3. This definition has been adopted by other courts. See, e. g., Monday v. United States, 421 F.2d 1210, 1216 (7th Cir. 1970); Hewitt v. United States, 377 F. 2d 921, 924 (5th Cir. 1967); White v. United States, 372 F.2d 513, 521, 178 Ct.Cl. 765 (1967); Spivak v. United States, 370 F.2d 612, 615 (2d Cir.), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); Cross v. United States, 311 F.2d 90, 94 (4th Cir. 1962).

turned to IRS by the bank.[4] The government's assessment of liability is based on the uncontroverted fact that checks were sent to other creditors by Dudley and were paid by the bank subsequent to the date upon which the check to IRS was dishonored. Dudley, however, testified that he was not aware that the IRS check had been dishonored until July 2, 1960, when he investigated the company's books with the aid of William F. Brower, a C.P.A. whom he had hired. Brower corroborated this testimony. It was not disputed. In the ordinary course of handling, the dishonored check would have been returned by the bank to the depositor and endorser. This would have been the IRS. Unless either the IRS or the bank notified the drawer corporation that its check had been dishonored neither the corporation nor Dudley, its president, would have known about it. There was no evidence that either the government or IRS notified the corporation or Dudley that the check had been dishonored. At this time the corporate books were in a state of disarray due to the resignation of the company's bookkeeper sometime previously. Dudley further testified that, although the corporation's checking account at the Bank of America was normally overdrawn, payment of all checks was assured by virtue of an agreement with the bank's branch manager, Richard F. O'Brien, whereby the bank would pay all overdrafts. Mr. and Mrs. Dudley personally guaranteed payment of any overdraft, and had always made good on this guarantee. O'Brien denied making any "blanket arrangement" with Dudley. He testified, however, that with respect to overdrafts, "we always managed to cover him." (R.T. 590). When asked who determined what checks were to be paid when the account was overdrawn, O'Brien testified that the bank determined that it would pay "the most important checks." (R.T. 618). O'Brien, however, admitted that, while thirty-three checks had been presented against insufficient funds from March through June, 1960, he could not point to a single one which had not ultimately been paid by the bank prior to the dishonoring of the IRS check on June 10. A check for payment of the corporation's withholding tax in the amount of $6677 for the last calendar quarter of 1959 was written by Dudley on January 31, 1960, and was honored by the bank on March 3, 1960, despite the creation of an overdraft in the amount of $1097.98.

Moreover, the bank statements of the corporation account with the Bank of America disclosed that there had been a deposit of $9500 on May 27, 1960. Likewise deposits were made in the corporation account at the American Trust Company in excess of $15,000 during May, 1960, which could have been used to pay the IRS check in question had Dudley been made aware that the check had been or was about to be dishonored. Had Dudley or the corporation received any notice that the IRS check had been or was to be dishonored the sums represented by these deposits could have been devoted to the payment of this check.

It is unclear whether O'Brien unilaterally decided to cease his apparent course of dealing—if not a "blanket arrangement"—of paying all checks, or whether he acted upon the order of D. Jersey Grut who was in the process of replacing Dudley as the responsible officer of the corporation in May and June of 1960, or whether the check was dishonored for some other reason not advanced at trial. But it is clear that Dudley had neither actual nor constructive knowledge that the check would be dishonored at the time he wrote it. On the contrary, he had

---

4. The reason for the dishonor of the check was either insufficient funds or the Bank's refusal to honor checks signed by Dudley as per the direction of one D. Jersey Grut, who, according to Dudley, headed a conspiracy to oust Dudley from control of the corporation. The General Ledger (Exh. 7) at Page D 48 contained a notation with regard to this check as follows: "The following Bank of America check will not be honored by the bank in accordance with Mr. Grut's instructions. District Director of Internal Revenue. $7466.21." This was not discovered by Dudley until July or August, 1960.

every reason to believe that the bank would honor the check even if it created an overdraft.

This case is different from Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), upon which appellee relies. The defendant against whom the penalty assessment was there made, knew that the taxes had not been paid and deliberately elected in the face of that knowledge to use available corporate funds to pay other creditors. Explained the court at page 222:

"Appellant's own testimony indicates that the corporation had funds in the bank in amounts in excess of the taxes due, but they were admittedly used to pay other bills. The record discloses that the appellant knew in January of 1948 that the taxes for the fourth quarter of 1947 were due; that they were not paid; that throughout 1948 the corporation continued to operate; that he decided to file returns without making payment of the taxes due because his attorney advised him that the returns must be filed even if the taxes due were not paid; that appellant continued to put money into the business; that he persuaded other creditors to accept debentures subordinate to taxes, expecting the business to pull out of its distress; that subsequent to the termination of the relationship with the allegedly interfering bank some corporate money was used to pay interest on the debenture bonds and to reduce the mortgage on the corporation's real property."

This case is akin to United States v. Leuschner, 336 F.2d 246, 248 (9th Cir. 1964), where the court held:

"The government says that, as a matter of law, Leuschner's conduct is within the Bloom definition of 'willfully.' As to the Yosemite taxes, we think not. The question is one of fact. (Wilson v. United States, 9 Cir., 1958, 250 F.2d 312, 325.) The evidence does not require a finding that the failure of Yosemite to pay over the withheld taxes was caused by a 'voluntary, conscious, and intentional act' of

Leuschner. It would support a finding that Leuschner did not know that the taxes were not paid, and believed that they were. At most, Leuschner was negligent, which is not willfulness."

 The question of willfulness is one of fact. Wilson v. United States, 250 F.2d 312, 325 (9th Cir. 1958). Here the evidence is clear that Dudley had no knowledge that the taxes were not paid. He believed that they had been paid. Dudley may have been guilty of negligence but negligence is not willfulness. We agree with appellee that the tender of a check which is dishonored by the drawee bank does not relieve the taxpayer of its liability. But where the taxpayer and its responsible official had reason to believe the check had been paid, and had not been notified to the contrary, it would under the circumstances shown here dispel a finding of willfulness under the statute.

The factual situation in Moody v. United States, 275 F.Supp. 917 (E.D.Mich. 1967), is analogous to the instant case. There, a check sent to the IRS by the president of a "mortally afflicted" corporation in payment of withholding tax was returned. The court found that the president lacked willfulness under the statute, saying:

"Plaintiff did not knowingly and intentionally fail to collect and pay over the taxes in question because he did not have sufficient knowledge of the financial affairs of the corporation. He did not know, when the return and check were sent, that there would be insufficient funds in the account to cover the check." 275 F.Supp. at 926.

The court in Wiggins v. United States, 188 F.Supp. 374 (E.D.Tenn.1960), stated:

"The mere fact that the corporation may have had money to pay the taxes but used it to pay other bills, with the knowledge of [the corporate officer now assessed], would not be sufficient to establish a willful act. The proof would have to disclose that such conduct was done on purpose, knowing

that the taxes were due but paying other bills ahead of them." 188 F.Supp. at 376.

Dudley was not relieved of liability by tendering the dishonored check. 26 U.S.C. § 6311(b) (1). From the time that he learned of the bank's refusal to pay the check, it can be said that he willfully failed to pay over the tax due to the IRS. He also willfully failed to pay the corporation's withholding tax for the second calendar quarter of 1960 which became due on July 31, 1960. We find, however, that beginning at a time before Dudley received knowledge that the May 2 check had been dishonored, Dudley had ceased being the "person" in the corporation "required to collect, truthfully account for, and pay over" the withholding taxes, as defined in 26 U.S.C. §§ 6671(b) and 6672. This court has defined the "person" responsible for the payment of the tax as that individual who "had the final word as to what bills should or should not be paid, and when." Wilson v. United States, *supra,* 250 F.2d at 316. See also Pacific National Ins. Co. v. United States, *supra,* 422 F.2d at 31; Bloom v. United States, *supra,* 272 F.2d at 222; White v. United States, *supra,* 372 F.2d at 516, 518. "Final" means "significant, rather than exclusive control." Turner v. United States, *supra,* 423 F.2d at 449. "[T]he section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred." United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962).

Although Dudley retained the title of corporation president during the period in question, the holding of corporate office does not, *per se,* impose liability upon the officeholder. Monday v. United States, *supra,* 421 F.2d at 1214; Campbell v. Nixon, 207 F.Supp. 826, 829 (E.D.Mich.1962). The court in *Campbell* stated: "If, having the duty to make pay-

ment, plaintiff was prevented from discharging it by the actions of other persons in the corporation, he must be relieved of liability." 207 F.Supp. at 830.

Dudley testified at trial that his authority in the corporation began to diminish in May, 1960. On June 20, he made an agreement with D. Jersey Grut which gave Grut greater control over the company. On or about June 22, Dudley was locked out of one of the plants upon the apparent order of a creditor.

Another principal creditor, Fireside Thrift, wrote Dudley under date of June 7, 1960, in part:

> "In order to get the program under Mr. Grut's supervision[,] and we understand that he will be in charge of all financial arrangements in the future, we will require. * * * " (Plaintiff's Exh. 13B).

Its attorneys wrote the corporation under date of June 22, 1960, accelerating the company's obligation to it of $75,672.-31 and declaring the same immediately due and saying:

> "In addition, my client is exercising the right given it in the said agreements and will endeavor to obtain possession of the inventory securing the loans hereinabove mentioned, so that the inventory may be liquidated and the proceeds applied to your accounts." (Plaintiff's Exh. 13A).

The trial court found that while there was evidence of ouster, the contrary was more persuasive and that

> "All of this evidence taken as a whole shows that plaintiff on June 20, 1960, was still acting as president of the corporation and was in control thereof contrary to his claim that he was locked out of the corporation." 285 F.Supp. at 981.

Were this a question of substantial conflict in the evidence, we would be bound by the trial court's finding. It appears, however, that there was no real conflict and that the evidence of almost complete

loss of control was uncontradicted.[5] We think that the District Court ignored this uncontradicted testimony of Mr. Dudley. Positive, uncontradicted testimony as to a particular fact should control the decision of the court unless it is inherently improbable, unreasonable or questionable. *See* Quock Ting v. United States, 140 U.S. 417, 420–421, 11 S.Ct. 733, 35 L.Ed. 501 (1891); Factor v. Commissioner, 281 F.2d 100, 111 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961); Southeastern Canteen Co. v. Commissioner of Internal Revenue, 410 F.2d 615, 624 (6th Cir.), cert. denied, 396 U.S. 883, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969).

Dudley may well have been in control of some facets of the operation of Dudley Industrial Corporation on June 20, 1960, but he did not have control over the payment of checks. The testimony of Richard O'Brien, the Bank of America manager, revealed that he, either of his own volition or acting under the order of D. Jersey Grut or creditors of the corporation or both, exercised full control over the payment of checks in June, 1960. He paid "the most important" checks. (R.T. 618) There was no evidence that he ever elicited Dudley's advice as to which checks were "the most important." Dudley's desire to satisfy the corporation's tax obligations if he had the capacity to do so is evidenced by his self-initiated meeting with the IRS on August 11, 1960, at which time he informed the IRS of the deteriorated financial condition of the corporation.

The purpose of Section 6672 is "to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." Pacific National Ins. Co. v. United States, *supra*, 422 F.2d at 31. The purpose of the section is not served by imposing liability upon a corporate officer who had neither actual nor constructive knowledge of the nonpayment of tax until such time as he was unable, through circumstances beyond his control, to pay the tax.

We hold that, under the circumstances where appellant had no knowledge of his failure to pay the tax imposed upon his corporation by 26 U.S.C. §§ 3102 and 3402 until such time as he no longer had significant control over the corporation or the final word as to what bills should be paid, he is not personally liable for payment under 26 U.S.C. § 6672. To the extent that this holding may be factually inconsistent with the District Court's finding of fact, we hold that its findings are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

The judgment is reversed and the case remanded to the District Court with instructions to grant appellant's claim for refund in the amount of $3734.24 plus interest and to dismiss appellee's counterclaim.

---

5. The trial court noted that contrary evidence consisted of: (1) checks written by Dudley before the take-over which were honored by the bank afterward. The evidence shows that the selection of those checks was not controlled by Dudley; (2) that minutes were executed on June 20, 1960 by Dudley as President. These minutes, however, (Plaintiff's Exh. 9A) were the minutes which ratified the take-over by putting D. Jersey Grut in as Treasurer and his firm in control as "management consultants"; (3) as respects checks, there were none in evidence after June 8, 1960 which were signed by Dudley. All were signed by D. Jersey Grut and M. Shayman, a Grut employee, (Plaintiff's Exh. 30B–H incl.; Plaintiff's Exh. 57; Plaintiff's Exh. 49; Plaintiff's Exh. 32NN; Plaintiff's Exh. 32VV) pursuant to a change of signature cards on both the payroll account of the corporation (Plaintiff's Exh. 88) and the general corporate account (Plaintiff's Exh. 83) which divested Dudley of sole authority and required the co-signature of Grut as Treasurer or Shaymen as Ass't. Treasurer "or any other person designated in writing by the Treasurer."

KILKENNY, Circuit Judge (dissenting):

I respectfully dissent. The able and experienced trial judge had an opportunity to see and hear the witnesses, including the appellant. The judge made a specific finding that the corporation's check in payment of the taxes was dishonored due to insufficient funds and that appellant *did not* have a prior agreement with the bank to pay overdrafts. This finding, in my judgment, is supported by substantial evidence.

Moreover, in my opinion, there is substantial evidence supporting the finding that appellant was a responsible officer of the corporation at the time of the issuance of the check, its presentment for payment and thereafter during the period in question. True enough, there is a conflict in the testimony as to appellant's status. But the weight to be given testimony depends upon the credibility of the witnesses. The judge's findings on willfulness are shored by solid evidence. In these circumstances, I would not overturn the findings of the lower court.

I would affirm.