**Robert E. THURNER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 62–C–114.**

United States District Court
E. D. Wisconsin.

Nov. 1, 1966.

Alfred A. Heon, Robert P. Harland, and John L. Palmer, of Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for plaintiff.

David A. Wilson, Jr., Daniel J. Dinan, Attys., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., by Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## OPINION AND ORDER

GRUBB, Senior District Judge.

This is an action for refund of payments of withholding and F.I.C.A. taxes. This court has jurisdiction under Section 1346(a) (1), Title 28 United States Code.

Plaintiff was president and majority stockholder of Thurner Heat Treating Company. Its sales in 1957 were approximately a million dollars, and it employed seventy-five people. Plaintiff conducted the general operation of the business and

became aware of the obligation to pay withholding and F.I.C.A. taxes to the government.

The Universal Duplicating Machine Co., Inc. (hereinafter referred to as "Universal"), was a Wisconsin corporation. Heat treating services for Universal were rendered by Thurner Heat Treating Company in 1956 and 1957. Universal had financial difficulty. It owed Thurner Heat Treating Company some money in early 1957. Richard Hosking, treasurer of Universal, asked that either Mr. Thurner or his company loan Universal additional money. On January 14, 1957, Thurner Heat Treating Company loaned Universal $10,000. Through the summer of 1957, Thurner made attempts to collect from Universal. On July 1, 1957, Universal's debts to Thurner Heat Treating Company were consolidated in a demand note in the sum of $7,000. By September 19, 1957, Universal owed Thurner Heat Treating Company a total of $15,000. On September 20, 1957, it was apparent that Universal's financial situation was desperate. Mr. Avery, president, and Mr. Hosking, treasurer of Universal, met with Mr. Thurner to discuss the financial affairs of Universal. At that time, Mr. Thurner was made aware of Universal's withholding tax liability. Thurner countersigned a $15,000 note of Universal. In order to induce Thurner to do so, it was agreed on September 20, 1957 that Thurner would be the only person authorized to sign checks for Universal. Avery and Hosking at that time gave Thurner an option to purchase 5,000 shares of the common stock of Universal for $50. This stock had a par value of $50,000. An escrow agreement was executed, showing that Mr. Becker, attorney for Universal, was holding the shares until the option was exercised. Blank resignations of Avery and Hosking were also held in escrow by Becker.

After September 20, 1957, Universal's creditors looked to Thurner to pay its bills. During that period, Thurner's primary and major concern was to pay the current operating expenses of the company, although Thurner had been made aware that Universal was behind in payment of withholding taxes. On October 11, 1957, prior to going on a vacation, Thurner authorized one L. F. Kline to sign checks for Universal and to see if there was anything he could do to help Universal. Kline at all times remained an employee of Thurner. He was authorized to sign the payroll checks and other checks for bills that were pressing during Thurner's absence on vacation.

On October 25, 1957, Thurner executed his option to purchase the stock. Avery executed his resignation. Becker and Thurner were elected directors of Universal. Thurner was made president and Becker was elected secretary. Universal's liability for withholding taxes was discussed at the meeting of October 25, and Thurner was aware that he would be personally liable if the withholding taxes were not paid. A few days thereafter, Thurner signed a check for $5,000 to make Universal current on the withholding and F.I.C.A. taxes. He did not forward this check. These taxes were not paid on October 31, 1957, the due date. At that time, Universal had sufficient funds to pay this liability. On Thurner's return from his vacation, he discovered that the check was still in Universal's safe. He did not immediately notify the Internal Revenue Service, and did not know what became of the check. At that time, there were still funds in the bank. Thurner then had an accountant look over the available books and records, and on November 21, 1957, he executed his resignation disassociating himself from Universal. At that time, neither the withholding nor the F.I.C.A. taxes due for the third quarter of 1957, or due from October 1 to November 21, 1957, had been paid. On November 21, 1957, Universal had funds or customers' checks on hand totaling $13,829.15. Thurner then attempted to revoke his prior exercise of the stock option and release whatever rights he had under the option. Thurner attempted to avoid any responsibility for withholding and F.I.C.A. taxes by stating that he was not

acting as an officer or director of Universal and asked that if the company's records stated otherwise, they be corrected.

On December 4, 1957, a bankruptcy petition was filed to adjudicate Universal bankrupt, and a receiver was appointed. Thereafter, that receiver paid the District Director the amount of these taxes for that part of the fourth quarter of 1957 during which he was receiver. On October 23, 1961, the Internal Revenue Service notified Thurner that penalties for failing to account for and pay over these taxes would be assessed against him and there was an assessment against him of $15,451, which he paid. Thurner filed a claim for refund, together with interest, which claim was disallowed in full.

■ Under the provisions of Section 7501(a) of the Internal Revenue Code of 1954, Title 26 U.S.C.A., these taxes constitute a special fund in trust of the United States. Section 6671(b) of the Internal Revenue Code of 1954 defines the term "person" who is liable to pay such taxes. If such person willfully fails to do so, he is liable under Section 6672 for penalty equal to the amount of the tax. In a refund suit such as this, the burden of proof is on the plaintiff. Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385 (1930); Melillo v. United States, 244 F.Supp. 323 (E.D.N.Y. 1965); Datlof v. United States, 252 F.Supp. 11 (E.D.Pa.1966).

■ The government's assessment of the penalty is prima facie evidence of Thurner's duty to collect the taxes in question and of his willful failure to do so. It is clear from his own testimony that Thurner's primary and major concern was to pay current operating expenses of the company during the period when Universal's creditors looked to Thurner to pay the bills. From September 20, 1957, only Thurner or his agent Kline had authority to sign any checks to pay the government or any creditors. When Thurner went on vacation, he instructed his agent Kline to be sure that the payroll checks were signed and other checks which were drawn, which indicates his primary concern was to keep the company going rather than to pay the government.

Thurner raises two principal contentions in this action: (1) that he was not a person responsible for the payment of the taxes, and (2) that the non payment was not willful.

■ With reference to the question as to whether Thurner was a person responsible for the payment of the tax, under the holdings of Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146, Dillard v. Patterson, 326 F.2d 302 (5th Cir. 1963), and Tiffany v. United States, 228 F.Supp. 700 (D.N.J.1963), among other decisions, it is clear that Thurner was a person responsible for payment of the taxes. Under the decisions of Flan v. United States, 326 F.2d 356 (7th Cir. 1964), Bloom v. United States, supra, and Tiffany v. United States, supra, among other cases, it is clear that the finding that the failure to pay was willful must be permitted to stand under this record. It was a knowing failure, Thurner being aware that the taxes were due and that they were unpaid, and paying salaries and creditors with Universal funds on hand, which were available for the payment of these withholding taxes.

The foregoing sets forth the court's findings of fact and conclusions of law within Rule 52 Federal Rules of Civil Procedure. The clerk is directed to enter judgment against the plaintiff, Robert E. Thurner, dismissing this action.