**PACIFIC NATIONAL INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 22490.

United States Court of Appeals, Ninth Circuit.

Feb. 6, 1970.

Rehearing Denied March 3, 1970.

Certiorari Denied June 1, 1970.
See 90 S.Ct. 1838.

George H. Koster (argued), of Koster, Kohlmeier & Graham, San Francisco, Cal., for appellant.

Richard L. Carico (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., Chester C. Davenport, Elmer J. Kelsey, Lee A. Jackson, Attys., Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Pacific National Insurance Company, as surety, wrote payment and performance bonds on six government construction contracts awarded to Central States Construction and Equipment Company. Central exhausted its operating funds and requested Pacific's assistance. Arrangements were made to finance Central's operating expenses from May to September 8, 1955, when Central formally defaulted. During this period Central filed quarterly returns of income and social security taxes withheld from the wages of its employees, but the taxes were not paid over to the United States.

The district court held that Pacific was liable to the United States for an amount equal to the taxes reported as withheld from Central's employees because, in the circumstances of this case, Pacific was a "person required to collect, truthfully account for, and pay over" the taxes and "willfully" failed to do so, within the meaning of 26 U.S.C. § 6672.[1] 270 F. Supp. 165 (N.D.Cal.1967). We affirm.

We recognize that this interpretation of section 6672 is disputable. It is

* Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation.

1. Unless otherwise specified, all references in this opinion are to the Internal Reve-

therefore advisable to note that the problem with which we deal is of no importance so far as wages paid on or after January 1, 1967, are concerned. As to such wages, section 105(b) of the Federal Tax Lien Act of 1966, 80 Stat. 1139 (1966), 26 U.S.C. § 3505(b), explicitly requires the result which we reach under section 6672.[2]

A brief outline of the events which followed exhaustion of Central's funds will provide a useful background for consideration of the language and purpose of section 6672.[3] Late in April 1955 Central explained its situation to Pacific, and Pacific offered to advance the moneys necessary to enable Central to continue its work under the construction contracts. The district court found (and the finding is unchallenged) that at all relevant times thereafter Pacific knew that Central had no funds to pay the taxes which Central was required by law to withhold from wages paid to its employees, except funds made available by the arrangements which we now describe.

During May 1953 Central prepared payrolls showing the gross wages, deductions for income and social security taxes, and net wages of its employees; and drew checks on its own account in the amount of each employee's net wages. Pacific's representatives examined the payroll and individual checks, and had each employee endorse his check. They then carried the endorsed checks to the bank, deposited the net amount of the total payroll to Central's account, cashed the employees' checks, returned to the job site with the cash, and paid the employees. Central signed a note to Pacific

---

nue Code of 1954. 26 U.S.C. § 6672 reads in full:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

2. 26 U.S.C. § 3505 provides:

"(a) For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.

(b) If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i) (1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

(c) Any amounts paid to the United States pursuant to this section shall be credited against the liability of the employer."

3. Each party offered the testimony of one witness familiar with the critical events. In several important respects their versions of these events differed sharply. Much of Pacific's argument on appeal rests on the premise that the testimony of its witness should be accepted as true. The district court resolved the conflict in accordance with the testimony of the government's witness. We therefore follow the same course.

for the amount deposited. Although Central requested that Pacific deposit the amount shown on the payroll as withheld taxes. Pacific declined to do so.

The procedure was changed in June in order to subject progress payments due Central under the construction contracts to Pacific's control. A bank loan in the estimated amount of these payments was made to Central and guaranteed by Pacific; the proceeds were deposited in a bank account subject to Pacific's exclusive control. A "Special Account" was established for each of Central's construction jobs. Progress payments under the construction contracts were assigned to the bank, but Pacific retained the power to decide whether these payments would be added to the Special Accounts or applied to reduce Central's loan from the bank.[4]

The basic procedures followed in paying Central's operating expenses remained the same under the June arrangements. Central prepared payrolls showing gross pay, taxes withheld and net pay, and individual checks for the net pay due each employee. Pacific's representatives came to the job site, checked the documents, secured endorsements on the checks, carried the checks to the bank, deposited an amount sufficient to cover the checks, cashed the checks immediately, returned with the cash to the job, and paid Central's employees.[5]

Central understood that it was part of the June arrangements that Pacific would approve payment of taxes required to be withheld from the wages of Central's employees. The trial court found that "Central States would not have placed all of its potential income under the control of [Pacific] if it had known that [Pacific] would not release funds to pay and provide for withholding taxes." Nonetheless, when Central asked Pacific to approve payment of the withheld taxes reflected in each payroll, Pacific declined to do so, stating that it wished to postpone the matter.

During this period Central's non-payroll expenses were paid as follows. Central prepared and forwarded to Pacific a list of expenses together with a check and a letter of transmittal in Central's name to each creditor. Pacific decided which creditors would be paid, and transferred sufficient funds from the appropriate Special Account to Central's account to cover the total. Pacific then certified Central's checks and mailed them with Central's letters of transmittal to the selected creditors.

The district court concluded that Pacific "exercised complete dominion and control over funds belonging to Central States and was the person who decided which creditors of Central States were to be paid and when."

We turn to an examination of section 6672, under which the district court imposed liability upon Pacific.

Pacific argues for a narrow interpretation of this provision. It reasons as follows. Section 6672 imposes liability only upon the "person required to collect, truthfully account for, and pay over" the tax in question. The person required to collect and pay over income and social security taxes imposed upon the wages of employees is their *employer*, and no other. 26 U.S.C. §§ 3101, 3102, 3402, and 3403. Section 6671(b), defining "person"[6] as used in section 6672,

---

4. Pacific's witness testified that it was necessary to introduce the bank into the arrangement because the Assignment of Claims Act of 1940 prohibited assignment of progress payments under government construction contracts except to a bank, trust company or other financing institution and thus prohibited direct assignment to Pacific. 41 U.S.C. § 15.

5. The detailed testimony related to only one of the five construction sites, but there is no suggestion that the procedure at the other sites was materially different.

6. 26 U.S.C. § 6671(b) reads: "The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

merely specifies those individuals whose function it is to perform these acts when the employer is a corporation or partnership. Since it was stipulated, and the district court found, that Pacific was not the employer of Central's employees, and since Pacific obviously was not an individual officer or employee of Central, Pacific is not liable under section 6672.

■ We think Pacific reads sections 6672 and 6671(b) too narrowly. Briefly, it is our conclusion that the language of these provisions is broad enough to reach an entity which assumes the function of determining whether or not an employer will pay over taxes withheld from its employees; that this reading of the language serves the evident purpose of the statute; and that the district court's finding that Pacific performed this function with respect to Central is fully justified by the record.

The first point to be made is that it is not the purpose of section 6672 to impose liability upon the *employer* for the taxes collected from his employees; that liability is imposed by other sections of the Code. 26 U.S.C. §§ 3102(b) & 3404. Section 6672 imposes a liability separate and distinct from the employer's liability for the withheld taxes, and it imposes that liability upon persons other than the employer.[7]

The definition of "persons" in section 6671(b) indicates that the liability imposed by section 6672 upon those other than the employer is not restricted to the classes of persons specifically listed— officers or employees of corporations and members or employees of partnerships. "[B]y use of the word 'include[s]' the definition suggests a calculated indefi-

niteness with respect to the outer limits of the term" defined. First National Bank In Plant City, Plant City, Florida v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969).[8] As we said in United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962): "The term 'person' does include officer and employee, but certainly does not exclude all others. Its scope is illustrated rather than qualified by the specified examples."[9]

■ The language is broad enough to reach corporations and other artificial entities, as well as natural beings. The Code expressly provides that unless "otherwise distinctly expressed or manifestly incompatible with the intent * * The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation." 26 U.S.C. § 7701(a) (1). And since artificial entities commonly provide operating, accounting, and management services for independent businesses, it is not "manifestly incompatible" with the intent of section 6672 to include them within its reach.

■ We may assume that when the employer is a corporation the statutory language does limit liability under section 6672 to those who exercise the corporation's power to determine whether or not to pay over the withheld tax. But the definition of "persons" does not require that they be formally vested with the office or employed in the position normally charged with this function; the definition simply "includes" such persons.[10] Indeed, the language itself does not require that they be officers or employees of the corporation at all, so long as they are in fact responsible for con-

7. *See* Bloom v. United States, 272 F.2d 215, 221 (9th Cir. 1959); Spivak *v.* United States, 370 F.2d 612, 615 (2d Cir. 1967); Hewitt v. United States, 377 F.2d 921, 925 (5th Cir. 1967).

8. 26 U.S.C. § 7701(b) provides:
   "The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."

9. *See also* United States v. Hill, 368 F.2d 617, 621 (5th Cir. 1966); Botta v. Scanlon, 314 F.2d 392, 394 (2d Cir. 1963).

10. Section 6672 liability was imposed upon persons who were neither "officers" nor "employees" of the corporate employer in United States v. Graham, 309 F.2d 210 (9th Cir. 1962) (member of board of directors). *See also* Botta v. Scanlon, 314 F.2d 392 (2d Cir. 1963); (substantial stockholders and possibly a di-

trolling corporate disbursements.[11] As we held in *Graham, supra,* 309 F.2d at 212, "the section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred" ; it reaches those who have "the final word as to what bills should or should not be paid, and when." Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1958). *See also* White v. United States, 372 F.2d 513, 517, 178 Ct.Cl. 765 (1967).

This construction effectuates the underlying purpose of section 6672. The legislative history is uninformative,[12] but it is evident from the face of the section that it was designed to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax. It would frustrate this purpose needlessly to imply a condition limiting the application of the section to those nominally charged with controlling disbursements of a corporate employer, thus immunizing those who, through agreement with or default of those nominally responsible, have exercised this corporate function in fact.

No reason has been suggested why Congress would have wished to exclude cases like the present from the coverage of the statute. The effect of exclusion would be to permit the surety to use tax moneys in discharging its obligations to complete performance of the contract by channeling funds for the work through the distressed contractor. It is a matter of recent public record that surety companies themselves recognize that it would be unfair to permit a surety to finance continuation of construction by a distressed contractor without also discharging the tax liability generated by the payment of wages to the contractor's employees. *See* Hearings on H.R. 11256 & H.R. 11290 Before the Comm. on Ways & Means, 89th Cong., 2d Sess. 273 (1966).

rector); Mulcahy v. United States, 237 F.Supp. 656 (S.D.Tex.1964) (counsel).

11. Section 6672 liability was imposed upon persons formally outside the corporate structure in Walker v. United States, 68–1 U.S.T.C. ¶ 9370 (W.D.Okl.1968) (representative of major creditor); Regan & Co. v. United States, 290 F.Supp. 470 (E.D.N.Y.1968) (general contractor and its president; subcontractor was employer) ; Thurner v. United States, 260 F.Supp. 292 (E.D.Wis.1966) (creditor and holder of stock option during portion of tax period); Melillo v. United States, 244 F.Supp. 323 (E.D.N.Y.1965) (prospective purchasers of controlling stock interest under executory contract); National Bank of Commerce v. Phinney, 62–2 U.S.T.C. ¶ 9512 (D.C.Tex.1965) (temporary administrator of estate of majority stockholder); Tiffany v. United States, 228 F.Supp. 700 (D.N.J.1963) (controlling stockholder of parent corporation). *See also* Girard Trust Corn Exch. Bank v. United States, 66–2 U.S. T.C. ¶ 9510, at 86,601 (E.D.Pa.1966) (jury charge; bank as creditor supervising corporate employers' financial transactions would be liable if it "had sufficient control to pay those taxes and failed to pay them").

12. The House Report on the 1954 Code states that § 6672 is similar to certain sections of the 1939 Code. H.R.Rep. No. 1337, 83d Cong., 2d Sess. reprinted at 1954 U.S.Code Cong. & Adm.News p. 4568. Those sections appear to be 1718 (c) & (d), 1821(a) (3) & (4), 2557(b) (4) and 2707(a) & (d) of the 1939 Code, which applied only to certain chapters or subchapters. of the Code. Section 6672, on the other hand, applies to all of Title 26.

The 1939 Code sections are apparently derived from § 1114(d) & (f) of the Revenue Act of 1926. Similar earlier provisions may be found in 43 Stat. 343–44 (1924), 42 Stat. 309 (1921), 42 Stat. 268–69 (1921), 40 Stat. 1085 (1919), 40 Stat. 336 (1917), 39 Stat. 773, 775 (1916), 38 Stat. 764 (1914) and 38 Stat. 171, 177 (1913).

These sections were amended from time to time, but none of the changes appear significant. Legislative reports on the various revenue acts contribute nothing, and the present regulation, Federal Tax Regulations § 301.6672–1 (U.S. Code Cong. & Adm.News 1969), simply restates the House Report on the 1954 Code, *supra,* and the text of § 6672 itself. *See* also Rev.Rul. 54–158, 1954–1 Cum.Bull. 247.

Pacific contends, however, that statements in House and Senate committee reports submitted to the 85th Congress in 1956 and 1957 in connection with the legislation which added sections 7512 and 7215 to the Code,[13] and to the 89th Congress in 1966 in connection with the enactment of section 3505,[14] indicate that Congress did not intend section 6672 to apply to a surety in Pacific's situation. The substance of these statements is that a third person who provides funds to pay net wages is not liable for withheld taxes because he is not an employer. That result was reached in a number of cases in which the government attempted unsuccessfully to recover taxes from third persons under sections which clearly impose liability *only* upon employers.[15] As we have noted, however, section 6672 explicitly applies to persons who are *not* themselves employers. It seems quite clear that the statement in the reports to the 89th Congress was not made with section 6672 in mind,[16] and that the statement in the reports to the 85th Congress overlooked the fact that the decisions limiting liability to employers were not based upon section 6672.[17]

More importantly, however, the reports were not before the session of Congress which considered and enacted section 6672; they were submitted to sessions of Congress held four and twelve years later. Views expressed in a subsequent session of Congress, although perhaps not wholly beside the point, Haynes v. United States, 390 U.S. 85, 87 n. 4, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), can have but little relevance to the intent of an earlier session of Congress. United States v. Southwestern Cable Co., 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); United States v. United Mine Workers of America, 330 U.S. 258, 281–282, 67 S.Ct. 677, 91 L.Ed. 884 (1947). This disposes, too, of the argument that our interpretation of section 6672 is in error because Congress in 1966 enacted section 3505 of the Code, explicitly requiring the result which we reach under section 6672. Assuming that adoption of section 3505 reflects a narrower view than we have taken of the intention of the Congress which enacted section 6672 it is still true that "[t]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960).[18] Moreover, section 3505 is broader in scope than section 6672 as we have inter-

13. H.R.Rep. No. 1006, 85th Cong., 1st Sess. 2 (1957); S.Rep. No. 1182, 85th Cong., 2d Sess. 2 (1958).

14. H.R.Rep. No. 1884, 89th Cong., 2d Sess. 20 (1966); S.Rep. No. 1708, 89th Cong., 2d Sess. 22 (1966).

15. *See* Century Indem. Co. v. Riddell, 317 F.2d 681 (9th Cir. 1963); Phinney v. Southern Warehouse Corp., 212 F.2d 488 (5th Cir. 1954); Westover v. William Simpson Constr. Co., 209 F.2d 908 (9th Cir. 1954); Arthur Venneri Co. v. United States, 340 F.2d 337, 169 Ct.Cl. 74 (1965).

The government also failed in efforts to impose liability upon sureties under the terms of their payment bonds. *See, e. g.,* General Cas. Co. of America v. United States, 205 F.2d 753 (5th Cir. 1953); United States Fid. & Guar. Co. v. United States, 201 F.2d 118 (10th Cir. 1952); *cf.* Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953). *But see* United States v.

Phoenix Indem. Co., 231 F.2d 573 (4th Cir. 1956); *cf.* Home Indem. Co. v. F. H. Donovan Painting Co., 325 F.2d 870, 874 (8th Cir. 1963).

16. Section 6672 was not mentioned in the reports to the 89th Congress, and the hearings upon which those reports are based indicate that the reference was not to third-party liability under § 6672 but rather to a surety's non-liability either as an employer or on its payment bond. Hearings on H.R. 11256 & H.R. 11290 Before the Comm. on Ways & Means, 89th Cong., 2d Sess. 39, 53–54, 100 (1966). See note 15.

17. The hearings upon which the reports to the 85th Congress were based were not printed. However, at the time the reports were prepared *no court had yet considered* § 6672 as a basis for imposing liability upon non-employers.

18. *See also* Rainwater v. United States, 356 U.S. 590, 593, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958). ("At most, the

preted it, and successive, overlapping additions to the Internal Revenue Code are hardly uncommon. Regan & Co. v. United States, 290 F.Supp. 470, 479 (E.D. N.Y.1968).

Pacific urges us to follow United States v. Hill, 368 F.2d 617 (5th Cir. 1966). However, the interpretation which we place upon section 6672 was not considered by the court in *Hill;* it is nowhere discussed in the court's opinion, much less rejected. Moreover, since the *Hill* opinion does not develop the facts of that case in the frame of reference which our interpretation of the whether *Hill* is distinguishable on its section requires, we cannot be sure determinative facts.

■ Pacific argues that, in any event, its failure to pay over the tax was not "willful" because it was based upon a reasonable, if mistaken, belief that Pacific was under no legal duty to pay. The record justifies the conclusion that Pacific's failure was "a voluntary, conscious, and intentional act," and no more is required. Bloom v. United States, 272 F.2d 215, 223 (9th Cir. 1959).[19]

Finally, Pacific contends that the United States improperly withheld certain funds (apparently retainages under the construction contracts) and improperly applied those funds to tax obligations of Central other than those underlying the assessment against Pacific.

■ Pacific's contention that the government had no right to withhold the funds was not raised below,[20] and, possibly for this reason, the record is not adequate for a proper consideration of the issue. In these circumstances, we decline to decide it.[21]

■ Pacific's objection to the manner in which the fund was allocated is without merit. Although Pacific knew of the existence of the fund in July 1967, and it was not allocated until May 7, 1968, Pacific made no request for a different allocation. It is stipulated that the allocation made followed established governmental policy and, absent a request for a particular allocation, the Service may apply available funds to a taxpayer's obligation in accordance with its own established procedures.[22]

Affirmed.

---

1918 amendment is merely an expression of how the 1918 Congress interpreted a statute passed by another Congress more than a half century before. Under these circumstances such interpretation has very little, if any, significance").

The situation here is not like that in Glidden Co. v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), where subsequent legislation purported to declare the intent of earlier legislation and "the Congress [had] been stimulated by decisions of this Court to investigate the historical materials involved and [had] drawn from them a contrary conclusion." *Id.* at 541, 82 S.Ct. at 1468.

19. We have no ready answer to the suggestion in Frazier v. United States, 304 F.2d 528, 530 (5th Cir. 1962), that a different standard was applied by this court in the earlier case of Gray Line Co. v. Granquist, 237 F.2d 390 (9th Cir. 1956). Since *Gray Line* is factually distinguishable (there is nothing in the record of this case to show that Pacific relied in good faith upon the advice of

counsel), it does not control this case; and we follow the legal standard adopted in the later *Bloom* decision.

Pacific also cites United States v. Leuschner, 336 F.2d 246 (9th Cir. 1964). That case is not in point, its holding being simply that negligence is not willfulness.

20. The issue was not listed in the pretrial order and we have found no clear reference to it elsewhere in the record.

21. *See, e. g.,* Eason v. Dickson, 390 F.2d 585 (9th Cir. 1968); Arkansas Valley Feed Mills, Inc. v. Fox DeLuxe Foods, 273 F.2d 804, 809 (8th Cir. 1960); Fort Worth & Denver Ry. Co. v. Harris, 230 F.2d 680, 682 (5th Cir. 1956).

22. Hewitt v. United States, 377 F.2d 921, 925 (5th Cir. 1967); Datlof v. United States, 370 F.2d 655, 658 (3d Cir. 1966); *cf.* National Bank of the Commonwealth of New York City v. Mechanics' Nat'l Bank, 94 U.S. 437, 439, 24 L.Ed. 176 (1876).