**Benjamin SILBERBERG, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**Carl BRETTON and Sharon Bretton, Third-Party Defendants.**

**No. 69 Civ. 1051.**

United States District Court, S. D. New York.

Jan. 10, 1973.

Irving J. Panzer, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., for defendant; David P. Land and Taggart D. Adams, Asst. U. S. Attys., of counsel.

OPINION

ROBERT L. CARTER, District Judge.

The Internal Revenue Service assessed plaintiff Benjamin Silberberg in the amount of $3,711.30 in unpaid employee withholding taxes owed for the second and third quarters of 1965 by Fiesta Novelties, Inc. ("Fiesta"), a manufacturer of millinery wear until it closed in September, 1965. Plaintiff paid $500.00 of the assessment under protest and instituted this action to recover the protested payment. The government counterclaimed against Silberberg for $3,211.30, the unpaid balance due on the taxes owed by Fiesta, and filed a third-party action against Carl and Sharon Bretton, the President of Fiesta and his wife, its Secretary, charging them with responsibility for the unpaid taxes. Neither an appearance nor answer was filed on behalf of these third-party de-

fendants, and it was agreed to proceed to trial with only the plaintiff and government as parties. Jurisdiction of the Court pursuant to 28 U.S.C. § 1346(a)(1) is not contested.

Carl Bretton, a designer, with no background in business management, was asked by Sheffield Novik, presumably the owner of Novik & Co., Inc., one of Fiesta's principal suppliers to become President of Fiesta. After several conversations with the plaintiff, who had primary responsibility for the day to day operations of Novik & Co., and Mr. Novik, Mr. Bretton agreed to accept the offered employment. He assumed his duties in July, 1963 at a salary of $250.-00 per week, with the promise and expectation that if the business went well he would be given ownership of a percentage of stock of the company.

As Carl Bretton understood the arrangements, and he acted pursuant to that understanding throughout his tenure as President, the financial and business aspects of the operation were to be handled by Novik & Co. through Mr. Silberberg. Shortly after Bretton came to Fiesta factoring arrangements with Gotham Factors were terminated, and plaintiff concluded an agreement with Ambassador Factors to take over that responsibility. Ambassador was factor for Novik, but Bretton was ignorant of this relationship at the time. Bretton had no part in the preparation or discussion of the accounts receivable factoring contract. When the contract was ready, Bretton went to Ambassador's offices and signed it. At the same time, in what I regard as a convincing demonstration of a lack of business experience, Carl Bretton and his wife executed a personal guarantee of all debts due from Fiesta to Ambassador growing out of this factoring agreement.

Ambassador, in its dealings with Bretton, would first secure the plaintiff's approval before paying any money to Fiesta out of the latter's accounts receivable. On one occasion when Bretton delivered Fiesta sales invoices to Ambassador's office and asked for funds, the Ambassador representative telephoned plaintiff in Bretton's presence and discussed the arrangements to be made.

On October 24, 1963, Carl Bretton executed six demand promissory notes for $5,000.00 each, payable to Novik & Co. These notes were for indebtedness incurred by Fiesta prior to Mr. Bretton's employment. No similar transaction ever took place with any other Fiesta creditor while Bretton was President.

In July, 1965, Chemical Bank asked Bretton to close out the Fiesta account which it carried. He talked this matter over with the plaintiff. Plaintiff prepared a corporate resolution for Fiesta and made the necessary arrangements to open a Fiesta account at Chase Manhattan with plaintiff (under the alias George Rose) and Carl Bretton designated as necessary co-signers on all Fiesta checks. These arrangements were admittedly made because Fiesta had not been making promised payments to Novik & Co., and pursuant to these arrangements, plaintiff sought to make certain that the Fiesta funds were being used for legitimate business purposes. While the checks were prepared at Fiesta, Mr. Silberberg could determine their business legitimacy by merely seeing to whom the check was made payable. If in doubt, he questioned Bretton. If plaintiff refused to sign a check (which he could do), it could not be issued.

Plaintiff used the alias George Rose to hide from Fiesta's creditors the relationship between Fiesta and Novik & Co. He knew that if other creditors became aware that plaintiff was co-signing Fiesta checks they would be alerted to Fiesta's precarious financial condition and cut off supplies. Throughout 1965, plaintiff knew that Fiesta could not pay the $40,000.00 debt owed Novik, and the co-signing arrangement was made to insure that Novik would recover as much as possible of the money owed.

During 1965 there was a fire at Fiesta. Shortly thereafter Internal Revenue Service representatives spoke to Bretton about the withholding taxes which had not been paid. Bretton told the Internal Revenue Service that the tax arrears would be taken care of as soon as the in-

surance monies due as a result of the damage caused by the fire had been collected. When the check was ready and Mr. Bretton arrived at the insurance adjustor's office to pick it up, he was met there by plaintiff and a Mr. Colon of Ambassador. It was pointed out to Bretton that a lien existed pledging all Fiesta property to Ambassador, and therefore he signed the check over to Ambassador. Bretton then asked plaintiff what was to be done about the money owed to the Internal Revenue Service and plaintiff said "we will see what will happen."

Mr. Silberberg handled financial affairs for Novik. He knew that employee withholding taxes must be withheld, and the incident in reference to the insurance check makes clear that he knew specifically of Fiesta's tax difficulties. Plaintiff seeks to depict his co-signatory role as a purely mechanical one. He was given a check and he signed it; in short, he merely signed anything put before him.

Such an arrangement would place no restraint on Bretton, afford no protection for Novik & Co.'s debt, and be completely without business purpose. The Court cannot believe that a businessman of Silberberg's apparent sophistication would spend his time and energy in such a meaningless and profitless relationship. The very existence of the arrangement, together with its intended purposes, warrant the conclusion that Silberberg meant to, and in fact did, exercise close supervision over Fiesta's disbursements.

In 1964, Mr. Leo Eisgrau, father-in-law to Carl Bretton, took over as manufacturer's representative of Fiesta. He made all of his arrangements with plain-

tiff and Mr. Novik and took over the account because he believed Novik supported and controlled Fiesta financially and received assurances that this was the case. Except for these assurances, he would not have undertaken the assignment. Whenever his commissions were not paid promptly, he would speak to plaintiff. He knew his son-in-law was associated with Fiesta but did not know he was its President.

Finally, and perhaps most important to the resolution of this lawsuit, Silberberg personally directed certain monies to the payment of business debts notwithstanding his knowledge of outstanding taxes due and the agreement between Bretton and the Internal Revenue Service to pay those taxes.

The facts reveal an intimate association between Novik & Co., and Silberberg in particular on the one hand and Fiesta, specifically Bretton, on the other. Bretton consistently consulted Silberberg in making business decisions such as arranging for sales representatives or deciding whether to move Fiesta to a new location. Silberberg maintained close contact with Fiesta and often inquired of Bretton about Fiesta's financial condition including its ability to pay its debts and meet its payroll expenses. Bretton's inexperience and total lack of business expertise made him easily controllable by those with greater business experience. This is not to say that Bretton could not be held accountable for the failure to pay the government the taxes here under consideration. But Bretton's possible liability does not prevent recovery from those who like the plaintiff effectively, if not formally, controlled Fiesta's business affairs.

Internal Revenue Code of 1954 (I.R. C.) § 6672, 26 U.S.C. § 6672,[1] contem-

---

1. Failure to collect and pay over tax, or attempt to evade or defeat tax.

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof,

shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. Aug. 16, 1954, c. 736, 68A Stat. 828.

plates two distinct findings: 1) a person *required* to collect, account for or pay over any tax; and 2) *willful* attempt to evade or defeat the tax.

For the purposes of § 6672, a "person" as defined in I.R.C. § 6671(b) "includes an officer or employee of a corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs."

The plaintiff attempts to avoid liability by demonstrating that Bretton, as President of Fiesta, had the *official* power to direct the payment of taxes at any time notwithstanding any of the plaintiff's directions to the contrary. Although this contention may be uncontroverted, its acceptance is of no help to Silberberg. All that is proved as a result is that Bretton *too* may be liable for the taxes due. However, more than one person may be liable under § 6672. White v. United States, 372 F.2d 513, 178 Ct.Cl. 765 (1967).

The reach of the term "responsible person" within the meaning of § 6672 is incapable of a precise definition, the actual circumstances in each case are controlling. Most of the applicable cases involve an action against a member of the *corporate* structure of the firm whose tax is owing. Nonetheless, there have been numerous occasions where courts have found liability to exist against a person not officially connected with the business. Walker v. United States, 68–1 U.S.T.C. ¶ 9370 (W.D. Okla.1968); Regan & Co. v. United States, 290 F.Supp. 470 (E.D.N.Y. 1968); Thurner v. United States, 260 F.Supp. 292 (E.D.Wis.1966); Melillo v. United States, 244 F.Supp. 323 (E.D.N. Y.1965); Kaufman v. Scanlon, 245 F. Supp. 352 (E.D.N.Y.1965).

Thus the fact that plaintiff is not an officer or employee of Fiesta is not dispositive. The critical consideration is whether there is a sufficient nexus between the taxpayer and the business to warrant liability under § 6672. We find plaintiff's link to Fiesta to be sufficiently strong to warrant recovery against him of the unpaid taxes by the government.

The crucial question in this case is the degree of control exercised by the assessed taxpayer over the financial operations and disbursements of the delinquent business. The facts more than sufficiently demonstrate that plaintiff had the power to control the disbursements made by Fiesta and more specifically that he could have directed the payment of the taxes due.

"Authority to cosign in effect gives one the authority to decide which creditors should be paid. Plaintiff may not have participated in the preparation of the checks but he had the power to prevent disbursement of funds except to appropriate creditors . . .." Burack v. United States, 461 F.2d 1282 (Ct.Cl.1972).

Perhaps even more important than the specific co-signatory arrangement was the actual overall business relationship between Silberberg and Fiesta. The plaintiff was involved in the hiring of Fiesta's President; he arranged for Fiesta's factoring, was deeply involved in, if not actually responsible for, the continuing relationship between Fiesta and Ambassador Factors, and retained a sales representative for Fiesta. Silberberg maintained close business relations with Bretton, telephoning or visiting him quite often, frequently discussing Fiesta's financial affairs.

During the second and third quarters of 1965, when Silberberg was a co-signer of Fiesta checks, he knew of the outstanding tax obligation owing the government and in fact directed the payment of other creditors in preference to the United States. The only fair and reasonable inference which can be drawn is that Silberberg could, and in fact did, manage the financial operations of Fies-

ta through the inexperienced hands of Bretton. Viewed in this light, it is undeniably clear that plaintiff is liable for the taxes here due. Burach v. United States, *supra*; Scott v. United States, 354 F.2d 292, 173 Ct.Cl. 650 (1965); Bloom v. United States, 272 F.2d 215 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1959); Thurner v. United States, *supra*.

In addition to determining that plaintiff was required to pay taxes, it must also be concluded that he willfully failed to do so. "Responsibility without willfulness is not enough." McCarty v. United States, 437 F.2d 961, 194 Ct.Cl. 42 (1971). It is beyond dispute that "the standard of willfulness should not be construed to include 'reasonable cause' or 'justifiable excuse.' These concepts tend to evoke notions of evil motive or bad purpose which properly play no part in the civil definition of willfulness." Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Rather, "willfulness" in the context of this section means the "voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States." Bloom v. United States, *supra*.

The evidence presented strongly supports the conclusion that the plaintiff has indeed "willfully" failed to pay the tax involved here. Such a result could be reached merely by way of implication based on plaintiff's close control over Fiesta's business operations. In this case however the co-signatory arrangement and the fire insurance episode provide more explicit evidence of Silberberg's conscious intent to avoid payment of taxes by preferring other creditors.

Plaintiff's complaint for recovery of taxes paid is dismissed. Judgment for the government on its cross claim for the unpaid balance of the assessment here in question is granted.

Settle order on notice.