2011 OK 37

Debra A. **BAILEY**, Elizabeth L. Ballard, Pattipeg S. Harjo, Daniel T. Harris, Deborah A. Hill, Gariann Jacobs, Barbara Sue Madole, Teresa McIntyre, Victoria R. Wood and Professional Educators of Norman, Plaintiffs/Appellants,

v.

**INDEPENDENT SCHOOL DIST. NO. I–29 OF CLEVELAND COUNTY, OKLAHOMA, a/k/a Norman Public Schools,** Defendant/Appellee.

No. 109,031.

Supreme Court of Oklahoma.

May 3, 2011.

of the misconduct had occurred.

58 ■

Richard B. Wilkinson, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Robert L. Pendarvis, Mary Robertson, Oklahoma City, Oklahoma, for Defendant/Appellee.

KAUGER, J.:

¶1 We must decide whether a school district may deduct employer withholding taxes from teacher bonuses paid pursuant to the Education Leadership Oklahoma Act [1] when

1. Title 70 O.S. Supp.2007 § 6–204.2 provides in pertinent part:

A. Subject to the availability of funds, the Oklahoma Commission for Teacher Preparation and the State Board of Education are authorized to establish the Education Leadership Oklahoma program.

B. The purposes of the Education Leadership Oklahoma program are:

1. Provide teachers throughout the state information about National Board certification and the Education Leadership Oklahoma program scholarships and services;

2. Provide technical assistance and National Board certified mentors to all teachers seeking National Board certification upon request;

3. Provide scholarships, pursuant to the Education Leadership Oklahoma Act and Oklahoma Commission for Teacher Preparation rules, for teachers seeking National Board certification;

4. Provide a bonus to teachers who achieve National Board certification pursuant to the Education Leadership Oklahoma Act and State Board of Education rules;

5. Reward teachers who achieve National Board certification without the financial support of the Education Leadership Oklahoma program by awarding them the application fee and the amount of the scholarship given to Education Leadership Oklahoma participants pursuant to this section and commission rules; and

6. Provide recognition to National Board certified teachers ...

the state lacks sufficient funds to pay the bonuses and the taxes. We hold that it may.

## FACTS

¶ 2 Subject to the availability of funds, the State Department of Education (SDE) is authorized to provide an annual $5,000 bonus to teachers who attain National Board certification pursuant to the Education Leadership Oklahoma Act (Act). Prior to the 2007–2008 school year, the SDE provided the annual bonus directly to teachers who were eligible under the Act, and the payments were processed as 1099–MISC income for federal tax purposes. The SDE classified the teachers as independent contractors, apparently to avoid paying employer related withholding taxes. In 2007, the Internal Revenue Service (IRS) disputed the characterization of the teachers as independent contractors and determined that the annual bonus payments to teachers were wages and that for purposes of the bonus payments, the teachers were employees of the State.

¶ 3 The IRS and the State of Oklahoma, on behalf of the SDE, eventually settled the

E. Subject to the availability of funds appropriated by the Legislature for the purposes of this subsection, the application fee for National Board certification shall be paid for scholarship recipients by the Commission, and scholarship recipients shall be provided a scholarship in the amount of Five Hundred Dollars ($500.00) to cover other expenses associated with obtaining National Board certification.
F. It is the intent of the Legislature that the Oklahoma Commission for Teacher Preparation contract with Southeastern Oklahoma State University to establish Education Leadership Oklahoma program training in higher education teacher preparation programs in the state to assist teachers in meeting the requirements to obtain National Board certification.
G. All teachers seeking National Board certification shall be eligible to participate in Education Leadership Oklahoma program training to assist them in meeting the requirements of the National Board certification process, free of charge.
H. The Oklahoma Commission for Teacher Preparation shall promulgate rules for the selection of scholarship recipients, the selection and utilization of alternates, the payment and reimbursement of application fees, and the issuance of scholarships.
I. Subject to district board of education policy or collective bargaining agreement, additional professional leave days may be granted to teachers seeking National Board certification for National Board certification portfolio development. During the two (2) days of the additional professional days granted to teachers for National Board certification portfolio development, a substitute teacher shall be provided by the school district at no cost to the teacher.
J. The State Board of Education shall provide all teachers who attain National Board certification a bonus in the amount of Five Thousand Dollars ($5,000.00) annually no later than January 31 for as long as they maintain their National Board certification and are teaching in the classroom full-time in an Oklahoma public school. No school or school district shall be liable for payment of bonuses pursuant to this section.

K. The bonus shall not be included in the calculation of the teacher's salary for purposes of meeting the district or statutory minimum salary schedule or for purposes of compensating Oklahoma Teachers' Retirement System contributions or benefits.
L. The State Board of Education shall promulgate rules for the provision of the bonus pursuant to this section to include, but not be limited to, a process by which a National Board certified teacher will verify that:
1. The National Board certification has not lapsed; and
2. The teacher is still a full-time teacher.
M. It is the intent of the Legislature that the Oklahoma State Regents for Higher Education incorporate the National Board certification portfolio development into all programs in education leading to a master's level degree.
N. Upon implementation of this subsection as provided for in subsection O of this section, the State Board of Education shall provide all teachers who attain National Board certification a bonus in the amount of Seven Thousand Dollars ($7,000.00) annually no later than January 31 for as long as they maintain their National Board certification and are full-time teachers in an Oklahoma public school. No school or school district shall be liable for payment of bonuses pursuant to this section. Upon implementation, the bonus provided for in this subsection shall replace the bonus provided for in subsection J of this section.
O. Implementation of subsection N of this section shall be contingent upon the appropriation by the Legislature of state funds for the specific purpose of implementing subsection N of this section. Nothing in this section shall prevent the State Board of Education or a school district board of education from utilizing private, local, or federal funds to implement subsection N of this section.
The current version of the statute is not referenced because it was not in effect at the time the bonuses were distributed.

matter.[2] The IRS agreed to waive the liability for employer withholding taxes from past years. To avoid placing every teacher into the State's payroll system, the SDE decided to send the bonuses to each school district with instructions on how the money should be spent. On January 21, 2008, the SDE told each school superintendent to "pay [their] applicant(s) the $5,000 bonus (less the applicable Social Security, Medicare, and Income Tax) ..." and attached a "Revised Allocation Notice" which set forth an allocated total amount of $545,000.00. On February 11, 2008, the SDE sent out an additional "Revised Allocation Notice" which provided an additional $41,692.50 for the employer withholding tax. This raised the total allocation to $586.692.50.[3] Again, in 2009, a "Revised Allocation Notice" was attached to the bonus letters with a separate allocation for bonuses and a separate allocation for the employer withholding tax, identical to the format of the February 11, 2008, notice.

¶ 4 Unlike the 2008 and 2009 letters, the SDE did not specify separate allocations for the bonus in 2010.[4] However, the state superintendent sent an e-mail on January 26, 2010, to the superintendents of each school district telling them that the teachers would receive the "award for the full $5,000.00 ..."[5]; but that they would still have to comply with the appropriate IRS withholdings mentioned in the letter. On January 26, 2010, the Norman Public School District (School District) sent a letter to the eligible teachers and the Professional Educators of Norman (PEN), the professional organization of teachers employed by the School District, explaining that because the SDE did not send the School District the amount necessary to cover the State employer withholding

2. Although the IRS rulings are not a part of the record, the following information regarding the IRS determination is helpful. It was sent in a December 6, 2007, letter to Sandy Garrett, State Superintendent of Public Instruction of the Oklahoma State Department of Education from Brenda Bolander, State Comptroller of the Oklahoma Office of State Finance:

> Dear Superintendent Garrett;
> We have recently settled an appeal with the Internal Revenue Service (IRS) for the limited scope examination of the State of Oklahoma Employment Tax Returns (Forms 941) for calendar years 2001, 2002, and 2003. At issue was whether the annual bonus paid to teachers for National Certification by the Oklahoma State Department of Education is wages for purposes of Internal Revenue Code (IRC) 3121(b)(7)(E) and/or IRC 3121(b)(7)(F).
> The IRS has found for the purposes of the bonus payment that the teachers are subject to the will and control of the School District, State, and Statutes in performing their duties as public school teachers. The source of compensation for these services is irrelevant in determining worker classification. The fact that the bonus was paid by the State, rather than the school district, does not change the teachers' classification from employee to independent contractor. The amounts were paid in connection with the employee's services as a public school teacher. IRC 3401(d) provides that an employer (for purposes of withholding) can be someone other than the common law employer, if that person has control of the payment of wages.
> Based on the IRS worker classification determination, the bonus is wages and the teachers would be considered employees of the State,

per IRC 3121(a) and 3121(b). These wages are subject to Social Security, Medicare, and income tax withholding per IRC 3402(d).
> Effective immediately, as part of the settlement agreement, the State has agreed to no longer process these payments as 1099–MISC reportable and the State is not required to issue corrected 1099–MISC or W–2 forms to the teachers. Accordingly, OSF will reject any miscellaneous claims from this point forward which include these bonus payments.
> At this point, the State Department of Education will need to determine which method of payment it chooses to use, either add the teachers to the state PeopleSoft payroll system and pay them directly as state employees, or forward the funds to the school districts for payment to the teachers through the districts' payroll systems. There are issues to consider in making that decision and our staff is available to provide additional information as needed.
> Please let me know if you require any assistance during this transition.
> Sincerely,
> Brenda Bolander
> State Comptroller

3. Letter from Garrett, State Superintendent, Defendant's Motion to Dismiss, Exhibit "C."

4. There was no "Revised Allocation Notice" attached to the January 25, 2010 letter in the record provided.

5. January 26, 2010 e-mail from Sandy Garrett, Plaintiffs' Response and Brief in Opposition to Defendant's Motion to Dismiss, Exhibit "B," page 1 of 2.

taxes, the amount would be subtracted from their bonuses.[6]

¶5 On September 1, 2010, nine teachers, Debra A. Bailey, Elizabeth, L. Ballard, Pattipeg S. Harjo, Daniel T. Harris, Deborah A. Hill, Gariann Jacobs, Barbara Sue Madole, Teresa McIntyre, Victoria R. Wood, and PEN (teachers) filed a petition for declaratory relief in the District Court of Cleveland County asserting that the employer contributions had been wrongfully deducted from the teachers' bonuses. They asked the court to enter a declaratory judgment declaring that the manner in which the School District paid the bonuses was contrary to the Oklahoma statutes and SDE directives. The School District filed a Motion to Dismiss on September 27, 2010, arguing that the School District could not be liable for the payment of bonuses pursuant to ELOA and that because the School District was required to discharge the SDE's tax obligations, declaratory judgment could not be rendered. On December 2, 2010, the trial court issued an order granting the School District's motion to dismiss for failure to state a claim upon which relief could be granted.

¶6 The trial court found that because the School District could not be liable for bonus payments pursuant to statute, payment of the $5,000 bonuses was conditioned on the availability of funds. The court determined that the School District was required to use some of the allocated bonus money to fund the SDE's tax obligations. It also found that the School District was not a proper party and that there was no justiciable controversy. The teachers filed an appeal on December 21, 2010, and we retained the cause on January 24, 2011.

## PURSUANT TO 70 O.S. SUPP 2007 § 6-204.2, THE PAYMENT OF EDUCATION LEADERSHIP OKLAHOMA ACT BONUSES ARE SUBJECT TO THE AVAILABILITY OF FUNDS.

¶7 Federal law imposes an excise tax on every qualifying employer who has an employee. This excise tax is imposed on employers for the privilege of establishing and maintaining the relationship of employer and employee.[7] The taxes are the sum of two rates—the old-age, survivors, and disability insurance tax at 26 U.S.C. § 3111(a) and the hospital insurance tax in section (b).[8] This statute is referred to as the Federal Insurance Contributions Act (FICA). These tax rates are the same as the employee's tax rate and employers and employees are responsible for their respective portions.[9]

¶8 Prior to 2007, the SDE classified teachers as independent contractors for the purpose of awarding the bonuses. In 2007, the

6. January 26, 2010 letter from Brenda Burkett, CFO of Norman Public Schools, Plaintiffs' Response and Brief in Opposition to Defendant's Motion to Dismiss, Exhibit "C."

7. *Jones v. Goodson*, 121 F.2d 176, 179 (10th Cir.1941).

8. Title 26 U.S.C. § 3111(a) and (b) provide:

   (a) Old-age, survivors, and disability insurance.—In addition to other taxes, there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b))—
   In cases of wages paid during 1984, 1985, 1986, or 1987, the rate shall be 5.7 percent. In cases of wages paid during 1988 or 1989, the rate shall be 6.06 percent.
   In cases of wages paid during 1990 or thereafter, the rate shall be 6.2 percent.
   (b) Hospital insurance—In addition to the tax imposed by the preceding subsection, there is

   hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b))—
   (1) with respect to wages paid during the calendar years 1974 through 1977, the rate shall be 0.90 percent;
   (2) with respect to wages paid during the calendar year 1978, the rate shall be 1.00 percent;
   (3) with respect to wages paid during the calendar years 1979 and 1980, the rate shall be 1.05 percent;
   (4) with respect to wages paid during the calendar years 1981 through 1984, the rate shall be 1.30 percent;
   (5) with respect to wages paid during the calendar year 1985, the rate shall be 1.35 percent; and
   (6) with respect to wages paid after December 31, 1985, the rate shall be 1.45 percent.

9. Title 26 U.S.C. § 3111(a) and (b), see note 8, supra.

IRS disputed the classification and eventually determined that: 1) the bonuses were wages; 2) the teachers were employees of the SDE for bonus purposes, not independent contractors;[10] and 3) the SDE and the teachers would have to pay employee and employer withholding taxes. The IRS also determined that the teachers were employees of the State for purposes of the bonuses.[11] In order to avoid placing every teacher into the State's payroll system, in 2008 and 2009, the SDE sent the bonus payments, as well as the necessary employer withholding taxes, to the school districts. Since the IRS determination, the school districts have acted as intermediaries to send the funds to eligible teachers.

■ ¶ 9 Intermediaries or third parties can be held responsible for an employer's failure to pay employer withholding taxes. This liability arises from 26 U.S.C. § 6672(a)[12] which provides that persons other than the employer can be liable for an employer's tax contribution if they are responsible for collecting and accounting for the tax and wilfully fail to discharge that duty. This statute was enacted to provide the federal government with a method to collect unpaid taxes.[13] Once an employee has had taxes withheld from their wages, the United States has no recourse to recoup money from the employee which was not remitted by the employer.[14] This statute has been construed liberally by courts to impose liability on any "responsible person" who wilfully fails to remit employer withholding taxes.[15]

¶ 10 In *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743 (5th Cir.1982) the CEO of a company, the lending bank to that company, and the CEO of the bank were sued by the United States as "responsible persons" under 26 U.S.C. § 6672(a)[16] for failing to pay taxes withheld from employee wages. In that case, the officers of the lending company were executing payroll checks as well as checks for the employer withholding taxes, but they only honored the payroll checks even though the company's account was afforded a large overdraft varying between $98,500 and $237,000. The cause went to trial and the jury found both officers liable for the failure to pay the employer withholding tax contributions. Apparently, the lending bank's officers were found to be liable because they were primarily responsible for determining which of the company's creditors were paid. The jury determined that they each had a duty and responsibility to ensure the payment of the company's taxes. On appeal, the Circuit Court affirmed the decision of the trial court.[17]

---

10. Letter to Garrett, see note 2, supra.

11. Letter to Garrett, see note 2, supra.

12. Title 26 U.S.C. § 6672(a) provides:

General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

13. *Kadah v. United States*, 600 F.Supp. 1302, 1308 (N.D.N.Y.1985).

14. *Kadah v. United States*, 600 F.Supp at 1308, see note 13, supra.

15. *Slodov v. United States*, 436 U.S. 238, 259, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

16. Title 26 U.S.C. § 6672(a), see note 12, supra.

17. In *Commonwealth National Bank of Dallas v. U.S.*, 665 F.2d 743 (5th Cir.1982) the court noted one of the jury instructions provided at trial which stated, in pertinent part:

The term "responsible person" includes any person or entity who is connected or associated with the corporation-employer in such a manner that such person or entity has the power to see that the taxes are paid, has the power to make final decisions concerning disbursement of funds of the corporation, or has the power to determine which creditors are to be paid and when they are to be paid. "Final" means significant rather than exclusive control over the disbursal of corporate funds. The meaning of the term "responsible" is very broad and is not limited to the person who actually prepares the payroll checks or the tax returns, although it may include such person. A "responsible person," within the meaning of

¶ 11 Many cases acknowledge that a "responsible person" need not be vested with routine duties of collection and payment; it is sufficient that they have the authority to avoid the default that gave rise to the violation.[18] Here, the School District had the power to see that the taxes were paid and had significant, if not exclusive, control over the disbursement of the bonuses. The SDE had the responsibility to pay employer withholding tax contributions, and the School District, acting as a conduit, had a duty to remit the money to the IRS.

¶ 12 The Act provides that bonuses are "subject to the availability of funds."[19] In the past, the SDE sent enough money for the payment of the employer withholding tax contribution and the full amounts of the bonus. However, in 2010, the SDE did not send enough money to fully fund the bonuses and to pay the employer withholding tax contribution. This suggests that there were not sufficient funds available to do so. We recognize that the diminishment of the bonus is disappointing to the qualifying teachers, but it appears in this period of state budgetary shortfalls that the SDE determined that partial bonus was better than no bonus at all. The lack of availability of funds is illustrated by the recent amendments to the Act. Title 70 O.S. Supp.2010 § 6–204.2, was amended during the 2010 legislative session to suspend the payment of bonuses beginning June 30, 2010, through June 30, 2012, for teachers who attain national board certification during that period.[20]

## CONCLUSION

¶ 13 Pursuant to an IRS determination, insofar as the bonuses are concerned, the teachers are employees of the SDE, and the State is responsible for the payment of employer withholding tax contributions for the payment of these bonuses. Because the SDE was responsible for paying the employer withholding tax contributions, and the School District acted as a conduit for the SDE, the School District had a duty to pay the employer withholding tax contributions from the monies sent by the State for the payment of the bonuses to the teachers. It was not required to pay the full amount of the bonus if the funds were unavailable.

### AFFIRMED.

### ALL JUSTICES CONCUR.

---

the law, is not limited to a person in the sense of a human being as we customarily understand the word, but may include an individual, a bank, a creditor, or a corporation.

A responsible person need not even be authorized to draw checks for the corporation so long as he has the power to decide who will get such checks. In other words, the "responsible person" is any person or other entity who can effectively determine how corporate funds are to be spent and which bills should or should not be paid or when they should be paid. A person who is not an official of the employer, or a corporation unrelated to the employer, may also be a "responsible person" if, because of a peculiar relationship with the employer, such person or corporation controls the finances of the employer.

The *Commonwealth* Court also noted that:

In approaching the issue of personal responsibility for non-payment of withheld taxes, the courts have tended to disregard the mechanical functions of the various corporate officers, and, instead, have searched for the person or persons who could have seen to it that the taxes were paid, a person with ultimate authority over expenditures of corporate funds who can fairly be said to be responsible for the corporation's failure to pay over its taxes.

**18.** *Harrington v. United States*, 504 F.2d 1306, 1312 (1st Cir.1974); *Adams v. United States*, 504 F.2d 73, 75 (7th Cir.1974); *Pacific National Insurance Co. v. United States*, 422 F.2d 26, 30 (9th Cir.1970), *cert. den.* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269; *Werner v. United States*, 374 F.Supp. 558, 562 (1974), *aff'd without discussion* 512 F.2d 1381 (2nd Cir.1975); *United States v. North Side Deposit Bank*, 569 F.Supp. 948, 960 (W.D.Pa.1983); *United States v. Hill*, 368 F.2d 617, 621 (5th Cir.1966); *Mueller v. Nixon*, 470 F.2d 1348, 1350 (6th Cir.1972), *cert. den.* 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973).

**19.** Title 70 O.S. Supp.2007 § 6–204.2, *supra*, note 1.

**20.** Amended by Laws 2010, House Bill 3029, c. 457, § 4.